147 So.2d 137 (1962)
George W. MILTON, Petitioner,
v.
H.G. COCHRAN, Jr., Director, Division of Corrections, Respondent.
No. 31712.
Supreme Court of Florida.
October 17, 1962.
Rehearing Denied December 19, 1962.
*138 Sandstrom & Hodge, Fort Lauderdale, for petitioner.
Richard W. Ervin, Lakeland, and George R. Georgieff, Asst. Atty. Gen., for respondent.
O'CONNELL, Justice.
The petitioner, George W. Milton, after trial by jury in which he was ably represented by counsel, was found to be guilty of murder in the first degree. The jury recommended mercy and he was sentenced to life imprisonment.
On his petition for writ of habeas corpus we issued the writ and have heard oral argument of counsel.
Petitioner contends that his conviction resulted from a denial of due process of law. Specifically he complains that a confession was coerced from him through long periods of interrogation, solitary confinement, and unreasonable delay in taking him before a committing magistrate, and that the confession was improperly admitted into evidence at the trial.
We should note here that after entry of the judgment and sentence under which he is now held, petitioner prosecuted an appeal to the district court of appeal. This appeal was dismissed without opinion because petitioner escaped during the pendency thereof. Milton v. State, Fla.App. 1960, 121 So.2d 496. Petitioner was subsequently returned to custody and he then filed with this Court a petition for writ of certiorari to review the order of the district court dismissing his appeal. This petition was denied without opinion. Milton v. State, Fla. 1960, 125 So.2d 880.
We have considered carefully the question of whether habeas corpus is available to the petitioner under the allegations of his petition and the history of this case.
The obvious importance of the confession to the conviction obtained against petitioner and the allegations of abuse and of interrogation for long periods of time, coupled with the long delay in taking the petitioner before a magistrate, suggested a possible deprivation of due process so as to warrant our consideration of this matter on habeas corpus.
As a part of his return to the writ respondent filed before us copies of two volumes of the testimony taken at the trial of petitioner. This testimony reflects the proceedings which were had relating to the admissibility of the confession in evidence.
Petitioner's immediate legal entanglement commenced in the early morning hours of June 1, 1958 when petitioner drove his automobile into the waters of a river in Miami, Florida. He escaped, but his wife, who was asleep on the rear seat, was drowned.
Petitioner suffered injury to a shoulder and was taken to a hospital. On June 2nd he was taken to the City Jail and held for "investigation of manslaughter". He was held alone in a cell and apparently had no contact with friends, relatives or an attorney until he was arraigned before a justice of the peace on June 24th. Petitioner made his confession on June 11th and added to it the next day.
A warrant charging him with the murder of his wife was issued on June 14th.
The record reflects that petitioner was interrogated on June 1st while in the hospital. On June 2nd he was moved from the hospital to a cell. It is not clear whether he was questioned on that date.
On June 3rd, with his consent, he was given truth serum and questioned by two doctors for about 45 minutes.
On June 4th he submitted to a lie detector test which lasted for an hour and a quarter.
*139 On June 5th he was questioned for an hour and a half and on June 6th he was questioned for six hours but on another matter. It appears that the authorities of Polk County, Florida had asked Dade County authorities to hold petitioner for them, as had the State of Mississippi.
Petitioner was next questioned on June 11th. Officer Holmes testified that he took petitioner from his cell at 4:58 P.M. to an office and discussed boxing, in which petitioner was interested, until about 6:30 P.M. Then officer McClure questioned petitioner until 7:30 P.M. at which time Holmes and McClure went out to eat, returning at 8:30 P.M. and bringing food and drink to petitioner. Petitioner was questioned again from 8:30 until approximately 10:00 P.M., during which time he confessed. The last hour of the questioning was recorded on tape, which tape was later played before the judge and subsequently before the jury. A stenographer was sent for and arrived at about 11:00 P.M., at which time the petitioner repeated the confession before her for transcription.
Petitioner was then taken to a physician who examined and talked with the petitioner. The physician testified that the petitioner had no bruises or marks of injury, said he felt better since he had told the truth, and seemed composed, rational and quiet. Petitioner was then returned to the office where he had been questioned. He then read and signed the written version of his confession which by that time had been typewritten.
One of the officers testified that on the next day he received word from the jailer that petitioner wished to see him. When the officer arrived the petitioner told him he wished to change a part of his statement. The officer asked petitioner if he would go with him to the scene of the crime and re-enact it for him, to which petitioner agreed. He also agreed to have pictures taken of him at the scene, which was done. Afterwards the petitioner was taken to his home to pick up his clothing and then to an office where he went over the statement made the previous evening. He then made another statement which was reduced to writing and signed by him. In this last statement the petitioner explained that he had decided to kill his wife about a month before the crime here involved occurred because of her staying out late, coming in drunk, and associating with other men. On this occasion the petitioner was asked if he wished to change, in any other way, the statement made the previous evening, to which he replied he did not, saying:
"No, nothing except that I would like to say that now that I prayed to God for what I have done and he has forgiven me last night and now I am ready to face my punishment whatever it is and my obligation to man and the law."
Petitioner testified before the court on the question of admissibility of his confession that he was "interrogated long hours every day." However, he could only specifically remember being interrogated on June 3rd, 4th and 11th. He did not testify that he had been abused or threatened except on the evening of June 11th. He testified that on that occasion his arm was twisted behind his back, he was questioned under lights which created extreme heat, and he was threatened with a "ride in the country" if he did not confess. He did not complain that any period of interrogation was unduly long or that any was disorderly except as above noted. He did not complain in any way of the treatment accorded him on June 12th, the day he re-read his statement, reaffirmed it, and made another statement adding to the first one.
Petitioner testified that the officers induced him to confess by telling him that only by doing so was it possible that he would escape the death penalty. It appears that remarks of this nature were made by the officers following petitioner's oral confession, as recorded on the tape recorder, when petitioner asked them whether it was likely that he would receive *140 that sentence. However, such statements in themselves would not invalidate the confession.
It should be noted here that the petitioner made no contention that he was not informed of his constitutional rights. On the other hand the record reveals that the law enforcement officers did inform the petitioner of his right not to speak and warned him that if he did any statements could be used against him.
The portions of the trial record before us reveal that the trial judge painstakingly conducted inquiry into the circumstances leading up to the confession and of the actual giving of the confession by the petitioner. In the absence of the jury he heard the testimony of the law enforcement officers who interrogated petitioner during his incarceration, the doctor who examined petitioner immediately after his confession, and of the petitioner himself.
At the completion of this inquiry the trial judge stated:
"* * * from listening to the testimony * * * particularly after looking at your defendant testifying, observing him while he was testifying, observing his demeanor on the witness stand, and listening very carefully to his testimony throughout, I am convinced that the statement he had given in this case was one of a voluntary nature."
There is nothing to indicate that the trial court or the jury, which apparently also concluded the confession to be voluntary, clearly erred.
The evidence on the question was conflicting, the petitioner telling one version and all other witnesses a contrary one. In addition to the testimony of the witnesses there was played before the trial judge and subsequently before the jury a tape recording of the interrogation and oral confession of the petitioner. Petitioner denied the voice on the tape was his.
The trial judge and the jury had the duty to determine which of the witnesses were telling the truth. We are required to assume that they did not commit error and we must not overrule their determination unless error is clearly shown. Nickels v. State, 1925, 90 Fla. 659, 106 So. 479, and Cochran v. State, Fla.App. 1960, 117 So.2d 544, 79 A.L.R.2d 638.
The record does not support petitioner's contention that he was coerced into making a confession. It is not and cannot be shown from the record before us that the trial judge or the jury erred in determining that the confession was voluntarily given. Even if there was doubt as to the voluntariness of the confession given on the evening of June 11th, the fact that the petitioner after a full night's rest read his statement, affirmed it, and then amplified it destroys any such doubt. The petitioner in no way assails any treatment accorded him on the making of this second statement.
We must therefore conclude that this contention of petitioner is without merit.
We next consider whether the long delay in presenting petitioner before a magistrate in and of itself constituted a violation of organic due process.
This state does not follow the rule of McNabb v. United States, 1943, 318 U.S. 332, 63 S.Ct. 608, 87 L.Ed. 819, which holds that an unreasonable delay in presentation before a magistrate in itself constitutes a denial of due process.
Nevertheless, we are as much concerned as are the federal courts with protecting constitutional guaranties and in seeing that those accused of crime are fairly treated and receive all the protection offered by our system of government.
Our legislature has evidenced similar concern by enacting Sections 901.06 and 901.23, F.S.A., which require that a person arrested either with or without a warrant be taken before a magistrate "without unnecessary delay." The Attorney General *141 of this State has warned our law enforcement officers of the requirement of these statutes.
These statutes were not observed in this case. The State offered no explanation to show that the delay was justified or reasonable.
Nevertheless, in this instance it has not been shown that the delay in itself resulted in the petitioner's confession and we will not presume that it did.
However, we do not and we cannot condone the violation of said statutes as occurred in this case.
We would be derelict in our duty if we did not here point out that continued violation of these statutes are certain to result in the McNabb rule, or some version thereof, being adopted in this State or being imposed on our state courts by decisions of federal courts. Recent history promises this as an event reasonably to be expected.
For the reasons above expressed the writ of habeas corpus heretofore issued is discharged and the petitioner remanded to custody of the respondent.
It is so ordered.
ROBERTS, C.J., and THORNAL and CALDWELL, JJ., concur.
HOBSON (Ret.), J., dissents.