Robert PUGH and Nathaniel Henderson, on their own behalf and on behalf of all others similarly situated, Plaintiffs,

Thomas Turner and Gary Faulk, on their own behalf and on behalf of all others similarly situated, Plaintiff-Intervenors.

v.

James RAINWATER et al., Defendants.

No. 71-448-Civil.

United States District Court,
S. D. Florida,
Miami Division.

Oct. 12, 1971.

Rehearing Denied Jan. 25, 1972.

Bruce S. Rogow and Rene V. Murai, Legal Services of Greater Miami, Phillip A. Hubbart, Public Defender, Miami, Fla., for plaintiffs.

Alan H. Rothstein, City Atty., Larry J. Hirsch, Asst. City Atty., Miami, Fla., for defendant Bernard E. Garmire.

Stuart Simon, County Atty., Alan T. Dimond, Asst. County Atty., Miami, Fla., for defendant E. Wilson Purdy.

Robert L. Shevin, Atty. Gen., Barry Scott Richard, Asst. Atty. Gen., Miami, Fla., for defendants Sutton, Rainwater, Snowden, Adair, Berkman and Ferguson.

Joseph Pardo, Miami, Fla., for defendant Sidney L. Segall.

Joseph A. Wanick, City Atty., Henry A. Edgar, Jr., Asst. City Atty., Miami Beach, Fla., for defendant Rocky Pomerance.

Aaron A. Foosaner, Miami, Fla., for defendant Morton L. Perry.

Ralph F. Miles, Hialeah, Fla., for defendant David Maynard.

August, Nimkoff & Gladstone, Pearson & Josfesberg, Jepeway, Gassen & Jepeway, Miami, Fla., for amicus curiae, Dade County Bar Association.

## OPINION AND FINAL JUDGMENT

KING, District Judge.

Plaintiffs Robert Pugh and Nathaniel Henderson brought this class action, in which plaintiffs Thomas Turner and Gary Faulk have intervened, seeking relief for the alleged deprivation of their rights as secured by the Fourth and Fourteenth Amendments to the Constitution of the United States. Jurisdiction is founded upon 28 U.S.C. § 1343(3), (4) and grows out of a Constitutional attack (42 U.S.C. § 1983) upon the procedure whereby plaintiffs were incarcerated, upon information filed by the state attorney, and held for trial in Dade County, Florida, without review by a commit-

ting magistrate of the probable cause for their arrest.

The defendants herein are sued in their official capacities (sheriff, police chiefs, state attorney, justices of the peace and judges of small claims courts of Dade County and several of its municipalities) as individuals charged with the responsibility of administering the system under which plaintiffs were incarcerated.

The plaintiffs contend that they have been deprived of a Constitutional right to a preliminary hearing before a judicial officer to determine whether there is probable cause that they committed the offenses with which they are charged.

Under the present procedure the state attorney (or one of his assistants) considers the reports submitted by police officers of the results of their investigations and thereafter files a direct information and issues a capias for arrest of the individual charged with the offense. The person may be already in jail or is then arrested and waits in jail until either he is released on bond or is tried. There is no review by a judicial officer as to the probable cause for the arrest and detention of a person charged by the state attorney in a direct information.

Plaintiffs further allege they have been denied their constitutionally protected right to equal protection of the law in that in certain instances the police will process cases through the offices of the justices of the peace instead of going to the office of the state attorney as was done herein. A justice of the peace conducts a preliminary hearing for probable cause whereas the state attorney does not. It is contended that the unfettered discretion of the police in deciding whether to file criminal charges with the justice of the peace or the state attorney, results in an arbitrary and unreasonable creation of two classes of arrested persons, those who are afforded a preliminary hearing and those who are not.

Lastly plaintiffs contend that the setting of a monetary bail bond as a condition for the release of persons financially unable to post the bond creates two classes of arrested persons and discriminates against poor persons, thereby violating their right of equal protection of the law. Plaintiffs Henderson, Turner and Faulk allege they remain imprisoned because of their impoverished financial conditions.

In the case of plaintiff Pugh no bond has been set pursuant to F.S.A. Constitution, Article 1, § 14 since the main pending charge is robbery, a crime punishable by life imprisonment, F.S.A. § 813.011.

On May 13, 1971 the Court, upon the request of all counsel took the plaintiff's pending motions for summary judgment under advisement for the purpose of permitting the Florida Legislature an opportunity to consider pending legislation providing for the type of probable cause hearing sought herein. The Legislature adjourned without enacting the proposed statute and this case was set for final hearing. In the course of arguing their respective positions during final hearing, all counsel agree that there are no issues of fact to be resolved in this suit and that the issues can, and should, be determined as a matter of law.

Consistent with the philosophy of non-intervention in state criminal procedures the Court afforded the parties a reasonable time, subsequent to the final hearing, within which to attempt to agree upon the implementation of a system securing to all persons the protection of judicial review of the probable cause for arrest. This proved fruitless. The time of restraint is past and the Court has no alternative except to act.

## UNDISPUTED FACTS

A person may be charged with a crime in Dade County, Florida, in one of five ways:

(1) A police officer witnesses the commission of a crime, places the accused under arrest and takes him to

jail. Sometime between 24 hours and two weeks later the arresting officer files a sworn affidavit with the office of the state attorney who, then files a direct information and issues a capias against the defendant.

(2) A police officer conducts an investigation of an alleged criminal offense, decides he has sufficient evidence to arrest, and places the defendant in jail. The arresting officer then goes to the state attorney with his affidavit and a direct information is filed against the defendant by the state attorney.

(3) A police officer conducts an investigation but takes the case to the state attorney *before* making the arrest and, after issuance of the direct information, arrests the defendant and places him in jail.

(4) A police officer conducts an investigation, presents the matter by affidavit to a justice of the peace, who issues a warrant for arrest and conducts a preliminary hearing to determine probable cause as to the commission of the alleged crime. The defendant is released if no probable cause is found to exist.

(5) The results of an investigation are submitted by the state attorney to the grand jury, which determines probable cause and returns an indictment to a judge. After review, the judge either issues the arrest warrant and causes the indictment to be filed or dismisses the charge.

Under the process outlined in paragraphs 1, 2, and 3 above there is no judicial determination, prior to trial of whether or not there is probable cause to believe that the particular defendant under arrest did in fact, commit the offense for which he is being held in custody. The procedures outlined in paragraphs 4 and 5 provide for a probable cause hearing, by a judicial officer,

prior to trial and are not therefore under attack in this litigation.

When an accused person is informed against by the state attorney and arrested, processing of the information does not begin until the arresting officer appears before an assistant state attorney and files his affidavit of facts. In spite of the fact that officers are urged to file their affidavit with the state attorney as promptly as possible periods from twenty-four hours to more than two weeks elapse before the affidavit is filed and processing begins.

The state attorney, between January 1, 1970 and March 31, 1971, decided *not* to file direct informations in 1,165 cases in which a person had been charged or arrested as a result of police investigation. The majority of these "no actions" resulted from arrests on charges lacking sufficient evidence to justify the filing of an information.

Obviously, a judicial officer considering probable cause on a preliminary hearing would have promptly disposed of all of these cases with a tremendous saving of human misery (to all those who had been arrested on insufficient evidence) and of tax dollars (to the average citizen who is paying for the cost of a vastly overcrowded jail facility in Dade County, Florida).

Once the state attorney's office decides to file the information a period of twenty-four to seventy-two hours plus weekends is required to prepare the information for filing with the Clerk of the Criminal Court of Record. The information is then filed and set for arraignment with an average delay of ten to fifteen days from the time the arresting officer appears until the time the defendant is arraigned.[1]

At no time prior to trial is a defendant who is proceeded against by information afforded a hearing to determine the existence of probable cause. It is

1. Although the record does not reflect the ultimate disposition of the direct information cases alone, it does appear that of the total of 7,856 cases disposed of by the state attorney in 1970, there were 198 "nolle pros", and 1,565 acquittals.

the policy of the state attorney to oppose any attempt to secure such a hearing.

## JURISDICTION

■ Where the Federal Court is asked to pass upon the validity of state criminal procedures, the question of jurisdiction requires careful scrutiny. Defendants urge that the Federal Anti-Injunction Statute, 28 U.S.C. § 2283, along with the recent Supreme Court decisions in a series of cases led by Younger v. Harris, 401 U.S. 37, 91 S.Ct. 746, 27 L. Ed.2d 669 (1971), remove this cause from the Court's jurisdiction. See, Boyle v. Landry, 401 U.S. 77, 91 S.Ct. 758, 27 L.Ed.2d 696 (1971); Dyson v. Stein, 401 U.S. 200, 91 S.Ct. 769, 27 L. Ed.2d 781 (1971); Samuels v. Mackell, 401 U.S. 66, 91 S.Ct. 674 (1971); Perez v. Ledesma, 401 U.S. 82, 91 S.Ct. 674, 27 L.Ed.2d 701 (1971); Byrne v. Karalexix, 401 U.S. 216, 91 S.Ct. 777, 27 L.Ed. 2d 792 (1971).

The Anti-Injunction Statute provides that "A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments", 28 U.S.C. § 2283. The Younger case rested not upon an interpretation of this statute and the exceptions thereto but upon "the national policy forbidding federal courts to stay or enjoin pending state court proceedings except under special circumstances", 401 U.S. at 41, 91 S.Ct. at 749.

Under Younger et al., as well as under the statute the relief precluded is the enjoining of a prosecution or a declaratory judgment with the same effect, Samuels v. Mackell, supra. Moreover, in each of the Younger cases the requested relief included a declaration of unconstitutionality of a state substantive criminal statute. Plaintiffs at bar ask the Court neither to declare unconstitutional a state statute nor to enjoin a prosecution, but instead pray for a declaration of procedural rights and an injunction from the continued denial thereof. This case is therefore not in conflict with either Younger or 28 U.S.C. § 2283. Furthermore, even were the relief requested herein considered to be within Younger, the circumstances of this case would come within the exceptions to that principle.

Mr. Justice Black outlined in Younger the circumstances under which a Federal Court can enjoin a state criminal proceeding. There must be a "great and immediate" "irreparable injury" other than the "cost, anxiety, and inconvenience of having to defend against a single criminal prosecution," and the injury must be one that cannot be eliminated by the defense therein, 401 U.S. at 46, 91 S.Ct. at 751. Although Younger recognizes that jurisdiction would exist where a state prosecution was brought in bad faith or for harassment, as in Dombrowski v. Pfister, 380 U.S. 479, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965), it is clear that these factors are not additional prerequisites to relief but are indicative of irreparable injury. See also Duncan v. Perez, 445 F.2d 557, 5 Cir. 1971. In describing the harassment present in Dombrowski, the Court noted that "[t]he circumstances * * * sufficiently establish the kind of irreparable injury * * * sufficient to justify federal intervention", 401 U.S. at 48, 91 S.Ct. at 752.

Plaintiffs at bar are challenging the validity of their imprisonment pending trial with no judicial determination of probable cause. These facts present an injury which is both great and immediate and which goes beyond cost, anxiety, and inconvenience. Furthermore, the state has consistently denied the right asserted, so that the injury is irreparable in that it cannot be eliminated either by the defense to the prosecution or by another state proceeding. See Anderson v. State, 241 So.2d 390 (Fla.1970); Sangaree v. Hamlin, 235 So.2d 729 (Fla. 1970); Montgomery v. State, 176 So.2d 331 (Fla.1965); Baugus v. State, 141

So.2d 264 (Fla.1962).[2] For the reasons stated the Court finds that it has jurisdiction in this cause.

## CONSTITUTIONAL QUESTIONS

The principal constitutional issue for determination is, of course, whether one who is arrested and held for trial upon an information filed by the state attorney is entitled to a hearing before a judicial officer on the question of probable cause.

The Court is faced with a unique factual situation which does not appear to be controlled by the plethora of cases cited by counsel. Defendants rely on Lem Woon v. Oregon, 229 U.S. 586, 33 S.Ct. 783, 57 L.Ed. 1340 (1914) in which the Supreme Court held that an Oregon defendant who was accused by sworn complaint before a committing magistrate had no right to an examination as a condition precedent to the filing of an information by the district attorney. In *Woon* the Court was concerned with the validity of the information rather than the pre-trial detention. Furthermore, that case did not consider a procedure resulting in lengthy detention after arrest where neither a sworn complaint nor an information had been filed.

It is significant that the *Woon* case relied on Hurtado v. California, 110 U.S. 516, 4 S.Ct. 111, 292, 28 L.Ed. 232 (1884) holding that a grand jury indictment was not a prerequisite to a felony prosecution, and stating:

> \* \* \* we are unable to say that the substitution for a presentment or indictment by a grand jury *of the proceeding by information after examination and commitment by a magistrate, certifying to the probable guilt of the defendant,* with the right on his part to the aid of counsel, and to the cross-examination of the witnesses produced for the prosecution, is not due process of law." (Emphasis added.)  110 U.S. at 537, 4 S.Ct. at 122.

Numerous opinions have been cited in which this circuit has held there is no due process right to a preliminary hearing. The issue in each of those cases however, was the validity of the trial as affected by the absence of a preliminary hearing and not the validity of the pre-trial detention itself. In Scarbrough v. Dutton, 393 F.2d 6 (5 Cir. 1968) the Court, upholding a conviction where the defendant had been incarcerated for seven months without a preliminary hearing, stated, "The failure to hold a preliminary hearing, without more, does not amount to a violation of constitutional rights *which would vitiate the subsequent conviction*". 393 F.2d at 7. (Emphasis added.) *See also*: Murphy v. Beto, 416 F.2d 98 (5 Cir. 1969); McCoy v. Wainwright, 396 F.2d 818 (5 Cir. 1968); King v. Wainwright, 368 F.2d 57 (5 Cir. 1966); Worts v. Dutton, 395 F.2d 341 (5 Cir. 1968); Kerr v. Dutton, 395 F.2d 79 (5 Cir. 1968); cf. Hamilton v. Alabama, 368 U.S. 52, 82 S.Ct. 157, 7 L.Ed.2d 114 (1961).

In Anderson v. Nosser, 438 F.2d 183 (5 Cir. 1971), even though the Court did not consider the validity of a conviction, the facts were analogous to those in the foregoing post-conviction cases. In each case cited supra the pre-trial detention had ceased to exist, and the trial itself being valid, there was no continuing deprivation of rights. The confinement in *Anderson* occurred over a period of two to four days with the various federal complaints being filed from three months to fourteen months after plaintiffs' release. Consequently, in *Anderson*, just as in the post conviction cases the Court was asked to grant relief from a deprivation of rights no longer in effect. That the *Anderson* Court itself considered the case to come within the post conviction situation is apparent from its reliance upon Kulyk v. United States, 414 F.2d 139 (5 Cir. 1969), and other cases, all of which turned upon the validity of a conviction, 438 F.2d at 196.

---

2. The case law cited relates only to count 1 of the complaint. Lengthy consideration of counts 11 and 111 is unnecessary in light of the holdings which follow.

The instant case differs from the foregoing in that this Court is asked to determine the validity of a present confinement. The complaint herein was filed during plaintiffs' incarceration. Unlike *Anderson,* the confinement at bar is not an isolated event but is a recurring part of the state sanctioned prosecutorial system. Unless corrected the wrong complained of will continue to infringe upon the rights of the individual plaintiffs and the class they represent.

A criminal system wherein the individual faces prolonged imprisonment upon the sole authority of the police and/or prosecutor violates the principles which underly this country's founding and which are the essence of the constitutional guarantees of freedom from unreasonable seizure and from deprivation of liberty without due process of law.

The danger inherent in a system of this kind was described by Mr. Justice Frankfurter in McNabb v. United States:

[l]egislation, requiring that arrested persons be promptly taken before a committing authority, appears on the statute books of nearly all the states.

The purpose of this impressively pervasive requirement of criminal procedure is plain. A democratic society, in which respect for the dignity of all men is central, naturally guards against the misuse of the law enforcement process. Zeal in tracking down crime is not in itself an assurance of soberness of judgment. Disinterestedness in law enforcement does not alone prevent disregard or cherished liberties. Experience has therefore counseled that safeguards must be provided against the dangers of the overzealous as well as the despotic. The awful instruments of the criminal law cannot be entrusted to a single functionary. The complicated process of criminal justice is therefore divided into different parts, responsibility for which is separately vested in the various participants upon whom the criminal law relies for its vindication.

Legislation such as this, requiring that the police must with reasonable promptness show legal cause for detaining arrested persons, constitutes an important safeguard—not only in assuring protection for the innocent but also in securing conviction of the guilty by methods that commend themselves to a progressive and self-confident society. 318 U.S. 332, 343–344, 63 S.Ct. 608, 614, 87 L.Ed. 819 (1943).

Over forty years ago the Florida Legislature (1939) enacted a statute requiring any officer arresting without a warrant to take the defendant before a committing magistrate *without unnecessary delay,* F.S.A. § 901.23. Thus we see the requirement for a preliminary hearing is not a new innovation in the law of the State of Florida.

The Fourteenth Amendment provides that no state shall deprive any person of liberty without due process of law. The fundamental requisite of due process of law is the opportunity to be heard. Grannis v. Ordean, 234 U.S. 385, 34 S. Ct. 779, 58 L.Ed. 1363 (1914). "It is an opportunity which must be granted at a meaningful time and in a meaningful manner." Armstrong v. Manzo, 380 U. S. 545, 552, 85 S.Ct. 1187, 1191, 14 L. Ed.2d 62 (1965).

It has been held that a hearing must be given *before* a drivers license and vehicle registration can be suspended, Bell v. Burson, 402 U.S. 535, 91 S.Ct. 1586, 29 L.Ed.2d 90 (1971); Salkay v. Williams, 445 F.2d 599 (5 Cir. 1971); *before* prohibiting the sale of liquor to an individual for one year, Wisconsin v. Constantineau, 400 U.S. 433, 91 S.Ct. 507, 27 L.Ed.2d 515; *before* termination of welfare payments (even though a subsequent hearing was afforded), Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970); *before* garnishment of wages (even though there was a subsequent trial), Snidach v. Family Finance Corp., 395 U.S. 337, 89 S.Ct. 1920, 23 L.Ed.2d 349 (1969); *before* a thirty day suspension from a public school, Williams v. Dade County

School Board, 441 F.2d 299 (5 Cir. 1971); *before* refusal of admission to public hospital staff, Sosa v. Board of Managers, 437 F.2d 173 (5 Cir. 1971); and *before* termination of employment on college faculty, Ferguson v. Thomas, 430 F.2d 852 (5 Cir. 1970). It would appear beyond question that due process demands a preliminary hearing within a reasonable time after an accused has been deprived of his freedom.

In Goldberg v. Kelly, the Court summarized the test for providing procedural due process as follows:

> The extent to which procedural due process must be afforded the recipient is influenced by the extent to which he may be "condemned to suffer grievous loss." Joint Anti-Fascist Refugee Committee v. McGrath, 341 U.S. 123, 168, 71 S.Ct. 624, 647, 95 L. Ed. 817 (1951) (Frankfurter J., concurring), and depends upon whether the recipient's interest in avoiding that loss outweighs the governmental interest in summary adjudication. 397 U.S. 254, 262–63, 90 S.Ct. 1011, 1017–1018, 25 L.Ed.2d 287.

In this case the grievous loss is that of one's freedom and the countervailing governmental interest is that of the state in avoiding the burden of preliminary hearings. Although the state may incur additional expense in expanding its existing committing system to include hearings for direct information cases, this expense will be more than offset by the savings in jail and trial costs regarding those persons heretofore jailed and/or tried without probable cause. Moreover, these financial considerations are so grossly overbalanced by the prolonged loss of freedom by innocent persons that further comment is unnecessary.

The taxpayers of this community have labored under a near intolerable burden of the spiraling cost of combating crime. The expense of maintaining a jail, with many persons who would never be there in the first instance if their case had been reviewed by a judge in an effective committing magistrate system, will be substantially less than its present cost and will certainly be a tangible benefit to all citizens of this community.

■ A preliminary hearing in direct information cases is compelled by the Fourth Amendment as well as by the Fourteenth Amendment.

■■ The Fourth Amendment provides that "The right of the people to be secure in their persons * * * against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation * * * ". It has been established that this amendment is operable upon the states via the due process clause of the Fourteenth Amendment, Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961) and that it applies to arrest warrants as well as to search warrants. Giordenello v. United States, 357 U.S. 480, 78 S.Ct. 1245, 2 L.Ed.2d 1503 (1958).

The existence of a Fourth Amendment right to a probable cause hearing has been recognized in two opinions of the Court of Appeals for the District of Columbia Circuit. In Cooley v. Stone, 134 U.S.App.D.C. 317, 414 F.2d 1213 (1969) the Court held that a juvenile in the custody of a detention home had the right to a probable cause hearing and cited approvingly the following language of the lower court:

> No person can be lawfully held in penal custody by the state without a prompt judicial determination of probable cause. The Fourth Amendment so provides and this constitutional mandate applies to juveniles as well as adults. 414 F.2d at 1213.

In Brown v. Fauntleroy, 442 F.2d 838 (D.C.Cir.1971) the Court found that the same right applied to a juvenile released pending trial to the custody of his mother. In that opinion the Court emphasized that the basis of the right was in the Constitution and not in the Federal Rules of Criminal Procedure. Of

the fact that the accused was not in physical state custody the Court said;

> "[T]he right to be free of a seizure made without probable cause does not depend upon the character of the subsequent custody. Appellant accordingly has the right to have the validity of the seizure determined since he will be called to trial for conduct which led to the seizure." 442 F.2d at 842.

Recently the Supreme Court overturned a State Court conviction based upon evidence seized under a search warrant issued by the state attorney general who was the chief investigator and prosecutor in the case. The warrant was held to be invalid under the Fourth and Fourteenth Amendments because not issued by the "neutral and detached magistrate required by the Constitution", Coolidge v. New Hampshire, 403 U.S. 814, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971). If a prosecuting official cannot properly issue a search warrant in a case he is prosecuting, then he is a fortiori not a proper person for determining the existence of probable cause to hold an accused for trial.

The Court finds that under the Fourth and Fourteenth Amendments, arrested persons, whether or not released on bond, have the constitutional right to a judicial hearing on the question of probable cause.

Count II alleges that the system which denies a preliminary hearing to plaintiffs' class while granting a hearing to other criminal defendants is violative of the right to equal protection of the law. Because of the Court's holding that in all direct information cases the accused must be given a hearing as a right of due process and freedom from unreasonable seizure, it is unnecessary for the Court to determine whether the prior system was invalid for failure to afford equal protection of the law. See Troy State University v. Dickey, 402 F.2d 515 (5 Cir. 1968).

Plaintiffs contend in count III that where an accused is financially unable to post the required security for his release pending trial there exists an arbitrary and unreasonable classification based solely upon wealth in violation of the right to equal protection of the law. The record establishes that it is the policy of defendants to set bonds sufficiently low to allow accused persons their release while assuring their subsequent appearance at trial. The severity of the crime along with the accused's ties to the community, past criminal record, and financial resources are all considered in the setting of bonds. There is no allegation that any bond in question was set in excess of that which the judicial officer deemed necessary to assure trial appearance.

In contending that they are denied release solely because of their poverty, plaintiffs ignore the other factors distinguishing them from released persons. The record shows that plaintiffs' confinement is not the result of a classification based solely upon wealth, consequently they have not been deprived of their right to equal protection of the law.

The Court recognizes the cooperative attitude of the state authorities and their desire to comply with the law. Obviously they are the individuals most qualified to develop the new procedures required by this order. It is hereby suggested that the assistance of Presiding Circuit Judge Marshall C. Wiseheart in the implementation of this order would be helpful. It is therefore,

Ordered and adjudged:

1. That this is a valid class action brought pursuant to Rule 23(b) (2), Federal Rules of Civil Procedure, on behalf of all persons arrested in Dade County who are or will be proceeded against by direct information of the state attorney.

2. The named plaintiffs shall immediately be given a preliminary hearing to determine probable cause for their arrest by a committing magistrate unless their cases have been otherwise concluded.

3. That defendants shall, within 60 days of the date hereof, submit to the Court a plan providing for preliminary hearings before a judicial officer empowered to act as committing magistrate in all cases wherein prosecution is to be upon direct information. The preliminary hearing shall be within a reasonable time of the arrest.

4. Subsequent to final hearing certain motions for summary judgment, severance and transfer of party defendants to party plaintiff were filed. These motions be and the same are hereby denied.

5. The Court retains jurisdiction for a consideration of the plan and enforcement of the provisions of this final judgment.