Robert PUGH and Nathaniel Henderson, on their own behalf and on behalf of all others similarly situated et al., Plaintiffs,

v.

James RAINWATER et al., Defendants.

Civ. No. 71-488.

United States District Court,
S. D. Florida,
Miami Division.

Feb. 16, 1973.

Bruce S. Rogow, Rene V. Murai, Miami, Fla., Phillip A. Hubbart, Public Defender of the Eleventh Judicial Circuit of Dade County, Miami, Fla., for plaintiffs.

Jack R. Blumenfeld, Asst. State's Atty., Miami, Fla., for defendant Gerstein.

Alan H. Rothstein, City Atty., Larry J. Hirsch, Asst. City Atty., Miami, Fla., for defendant Bernard E. Garmire.

Stuart Simon, County Atty., Alan T. Dimond, Asst. County Atty., Miami, Fla., for defendant E. Wilson Purdy.

Robert L. Shevin, Atty. Gen., State of Florida, Barry Scott Richard, Asst. Atty. Gen., Miami, Fla., for defendants Sutton, Rainwater, Snowden, Adair, Berkman, and Ferguson.

Joseph Pardo, Miami, Fla., for defendant Sidney L. Segall.

Joseph A. Wanick, City Atty., Henry A. Edgar, Jr., Asst. City Atty., Miami Beach, Fla., for defendant Rocky Pomerance.

Aaron A. Foosaner, Miami, Fla., for defendant Morton L. Perry.

Ralph F. Miles, Hialeah, Fla., for defendant David Maynard.

August, Nimkoff & Gladstone, Pearson & Josefsberg, Jepeway, Gassen & Jepeway, Miami, Fla., for amicus curiae, Dade County Bar Assn.

JAMES LAWRENCE KING, District Judge.

I

## HISTORY

This action brought almost two years ago by Florida prisoners held for trial without ever having received an impartial judicial determination of probable cause for their detention, now comes before the court for detailed findings on the extent to which present state practice falls short of meeting constitutional requirements. In an order of October 12, 1972, this court initially ruled that both the fourth amendment and the due process clause of the fourteenth amendment require a prompt hearing before a neutral and detached judicial officer for individuals held for trial solely upon an information filed by a single state attorney. Pugh v. Rainwater, 332 F.Supp. 1107 (S.D.Fla.1971).

The court allowed defendants both before and after that ruling an opportunity voluntarily to bring Florida practice into compliance with basic constitutional standards. After this case was initiated on March 22, 1971, the court permitted the pre-trial schedule to be protracted in order that the 1971 Florida Legislature might have an opportunity to consider and act upon the issue. Likewise, the court's October 12 order postponed the question of implementation to provide all defendants 60 days within which to avail themselves of the opportunity to submit proposals concerning what sort of system for providing prompt preliminary hearings by an impartial judicial officer should be adopted in Dade County, Florida. The only proposal submitted in response to the court's mandate, (which came from defendant E. Wilson Purdy, Sheriff of Dade County) suggested the creation of a committing magistrate system.[1] In the absence of alternative proposals, the Purdy Plan, as it came to be known, was substantially adopted on January 25, 1972, after careful deliberation by the court. Pugh v. Rainwater, 336 F.Supp. 490 (S.D.Fla. 1972).

Implementation of the Purdy Plan was delayed at the request of defendants for 90 days to permit adequate time for necessary administrative arrangements. State Attorney Gerstein's subsequent request that the court further delay compliance, pending completion of an appeal, was denied. The Fifth Circuit Court of Appeals granted the requested stay by order of March 31, 1972.

Despite the Fifth Circuit stay, Dade County judiciary officials moved voluntarily in the hiatus during appeal to establish their own plan for providing preliminary hearings. To effectuate this court's implementation order, a Committing Magistrate Rules Committee

---

1. Defendant State Attorney Gerstein adopted Sheriff Purdy's plan, while reserving his right to pursue appellate remedies.

was formed by administrative order of Chief Judge Marshall C. Wiseheart of the Eleventh Judicial Circuit of Florida on March 13, 1972. After the stay had been issued, however, the work of the committee independently bore fruit as an administrative order of the Chief Judge created a committing magistrate system on April 15, 1972, which provided a limited right to a preliminary hearing. Although the requirements of the Dade County Magistrate System did not entirely conform with those of this court's order or those of the Purdy Plan, the differences are now moot in view of subsequent developments.[2] In retrospect, it is only unfortunate that in spite of our efforts to secure alternative proposals, the court did not have the opportunity to consider the plan actually implemented.

The signal development, however, came with the issuance of Amended Rules of Criminal Procedure by the Florida Supreme Court on December 6, 1972. The Amended Rules, which took effect February 1, 1973, provide many of the safeguards contained in this court's plan of January 25, 1972, including provision for preliminary hearings under a committing magistrate system. The State Supreme Court has once again demonstrated that it is not blind to the continued violation of 40-year old state statutes requiring an arresting officer to take the defendant before a committing magistrate *without unnecessary de-lay*. Fla.Stat. §§ 901.06, 901.23 (1971), F.S.A. (originally enacted as Law of June 12, 1939, ch. 19554, §§ 6, 23, [1939] Fla. Laws 1300); *see e. g.* State ex rel. Carty v. Purdy, 240 So.2d 480 (Fla.1970); Milton v. Cochran, 147 So. 2d 137 (Fla.1962).

Upon hearing oral argument on October 18, 1972, in the appeal, the Fifth Circuit entered an order on October 24, vacating its stay of our January 25, 1972 order, directing this court to make specific findings on the constitutional deficiencies of present practice, and authorizing the implementation of the Purdy Plan.[3] In accordance with that mandate, a hearing was set for November 16, 1972, but delayed at the request of defendants until January 18, 1973. On the basis of the presentations of the parties and amicus curiae Dade County Bar Association at that hearing, the following findings of fact and conclusions of law are hereby entered.

The parties agreed and stipulated to the premise, in which the court concurs, that the mandated assessment of present practices must concern itself with state procedures after February 1, 1973, under the Florida Rules of Criminal Procedure as now amended. The parties further agreed and stipulated that, so viewed, only four aspects of present practice differ from the court's plan of January 25, 1972, and remain to pose issues of constitutional dimension in this case.

---

2. It should be noted that although defendant State Attorney Gerstein acquiesced in the committing magistrate system, he reserved the right to continue to file direct informations with the Clerk of the Criminal Court of Record.

3. The Fifth Circuit order stated:
"[I]t is now
"ORDERED that the stay order heretofore entered is hereby VACATED.
"It having been made to appear on oral argument that with the substantial acquiescence of the Attorney General of the State of Florida, measures have now been instituted to afford some of the relief relating to hearings to determine probable cause for arrest of members of the class represented by named plaintiffs, the trial court is directed to compare in detail the plan incorporated in its order with the present practice, and make specific findings in which it determines to what extent the present practice falls short of meeting constitutional requirements. A copy of its findings shall be furnished to counsel and to this court.
"Pending the completion of such inquiry, the trial court may put into effect such parts of its plan as are consistent with the proposed plan submitted to the court by Sheriff Purdy."

## II

THE PRESENT PRACTICE WHICH PERMITS THE STATE ATTORNEY TO FILE AN INFORMATION AND OBVIATE THE REQUIREMENTS OF A DETERMINATION OF PROBABLE CAUSE BY A NEUTRAL AND DETACHED MAGISTRATE DIFFERS FROM THE COURT'S PLAN AND VIOLATES THE FOURTH AMENDMENT AND THE DUE PROCESS CLAUSE OF THE FOURTEENTH AMENDMENT

 Rule 3.131(a) of the Florida Rules of Criminal Procedure, *as amended*, states:

"A defendant, *unless charged on an information* or indictment has the right to a preliminary hearing on any felony charge against him."

The Rule is consistent with the long-standing law of Florida. State ex rel. Hardy v. Blount, 261 So.2d 172 (Fla. 1972).

The validity of this practice, which permits the State Attorney to be the sole arbiter of probable cause, has always been the main issue in this case.

Not only does the present practice permit the State Attorney to block a preliminary hearing, it also allows him to overrule a determination of no probable cause made by a magistrate by refiling an information. Therefore the whole preliminary hearing system is really conditioned upon the desires of the State Attorney. If he files an information prior to the preliminary hearing, none will take place. If he files an information after a magistrate's detached and impartial determination of no probable cause, the accused may remain in jail until trial.

This practice cannot be reconciled with the constitutional requirements of the due process clause of the fourteenth amendment and the fourth amendment. The continuation of the practice is in clear conflict with the plan previously entered by the court and with the original decision of the court.

 In addition to the cases relied upon in that decision, 332 F.Supp. at 1107 et seq., recent Supreme Court decisions confirm that the deprivation of liberty caused by the prosecuting attorney without any judicial review is unconstitutional. *See* Morrissey v. Brewer, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed. 2d 484 (1972); Fuentes v. Shevin, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972); Stanley v. Illinois, 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972); Shadwick v. City of Tampa, 407 U.S. 345, 92 S.Ct. 2119, 32 L.Ed.2d 783 (1972), United States v. United States District Court, 407 U.S. 297, 92 S.Ct. 2125, 32 L.Ed.2d 752 (1972).

## III

THE PRESENT PRACTICE WHICH EXCLUDES MISDEMEANANTS FROM A PRELININARY HEARING DIFFERS FROM THE COURT'S PLAN AND VIOLATES THE FOURTH AMENDMENT AND THE DUE PROCESS AND EQUAL PROTECTION CLAUSES OF THE FOURTEENTH AMENDMENT.

 Rule 3.131(a) of the Florida Rules of Criminal Procedure, *as amended*, authorizes hearings before a neutral and detached judicial officer only "on any felony charge." Thus, misdemeanants need not be afforded a preliminary hearing under the present practice, despite the fact that the preliminary hearing provisions of the amended rules provide the only guarantee of prompt determinations of probable cause. Consequently, the accused misdemeanant remains unprotected by present practices against deprivations of his liberty. As the court's original opinion made clear, this deprivation of liberty is particularly unjustifiable as a denial of due process for those misdemeanants who remain in custody without bond. Pugh v. Rainwater, 332 F.Supp. 1107 (S.D.Fla.1971); *cf.* Morrissey v. Brewer, 408 U.S. 471,

92 S.Ct. 2593, 33 L.Ed.2d 484 (1972). The court's plan to effectuate its original order, as well as the proposal of Sheriff Purdy, therefore made no distinction between felony cases and misdemeanors.

However, it is well-settled that "once it is determined that due process applies, the question remains what process is due," Morrissey v. Brewer, 92 S.Ct. 2593, 2600 (1972), and that the process due depends on the extent to which an individual will be "condemned to suffer grievous loss." Joint Anti-Fascist Refugee Committee v. McGrath, 341 U.S. 123, 168, 71 S.Ct. 624, 95 L.Ed. 817 (1951) (Frankfurter, J., concurring), *quoted in* Goldberg v. Kelly, 397 U.S. 254, 263, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970).

Although we think it clear that the deprivation to misdemeanants held in custody unable to meet their bond requires a prompt, neutral probable cause determination, the question becomes more difficult as applied to misdemeanants out on bond and those who are charged with violating county ordinances which carry no penalty of imprisonment. We have therefore taken our cue from the Supreme Court in Argersinger v. Hamlin, 407 U.S. 25, 92 S.Ct. 2006, 32 L.Ed.2d 530 (1972) and concluded that a neutral determination of probable cause is required by the fourth amendment for all misdemeanants who face potential imprisonment.

■ However, we are unable to conclude that either due process or the fourth amendment requires a probable cause determination by a judicial officer for those misdemeanants accused of violations which carry no possible imprisonment. *See* Shadwick v. City of Tampa, *supra*. We think that misdemeanants within this category can properly be screened by a State Attorney for the very reason that his office is not fundamentally concerned with such prosecutions of the "barking dog" variety, but screens them as a general rule at the request of complaining citizens.

Thus, the State Attorney may not constitutionally obviate preliminary hearings where a potential term of confinement faces the misdemeanant.

The present practice, as embodied in the amended rule, suffers from an additional shortcoming. It creates a classification, based solely on the type of offense, which deprives accused misdemeanants, but not accused felons, of a right long recognized as "fundamental": the right not to be deprived of liberty without due process of law and consistent with the fourth amendment. Thus, although classification of crimes is ordinarily a matter left largely to the states, this categorization touches upon a right "that the Court has come to regard as fundamental and that demand[s] the lofty requirement of a compelling governmental interest" to justify it. United States v. Kras, 409 U.S. 434, 446, 93 S.Ct. 631, 638, 34 L.Ed.2d 626 (1973), *citing* Shapiro v. Thompson, 394 U.S. 618, 638, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969).

Two such state interests were advanced by defendants, with the voluntary cooperation and testimony of the Hon. John A. Tanksley, Chief Judge of the Magistrate Division of the Eleventh Judicial Circuit, as sufficiently compelling to justify the classification. First was the state's interest in assuring misdemeanants a fair and impartial trial. Judge Tanksley testified that Justice Adkins of the Florida Supreme Court wished to inform the court that although the advisory committee which formulated the amended rules had recommended that preliminary hearings be afforded misdemeanants, the Florida Supreme Court had demurred from so providing because of its concern that the same magistrate who determined probable cause in a misdemeanor case might end up trying that very case, thereby denying the defendant a fair and impartial trial. Although the state's interest in providing fair and impartial fact-finders is doubtless both a laudable and compelling one, Judge Tanksley went on to tes-

tify that preliminary hearings and misdemeanor trials are conducted by separate panels of judges under the present practice in Dade County. While he could not speak for practice in the remainder of the state, we are not in this suit faced with practices outside Dade County.

The second compelling interest suggested by defendants was that of expense to the state to provide preliminary hearings for misdemeanants. Judge Tanksley testified that if the five Dade County judges assigned as magistrates were to provide preliminary hearings for misdemeanants as well as felons their caseload might increase by as much as 30 to 35,000 cases a year, or approximately 3,000 a month. He acknowledged, however, that these projections represented an upper limit, and that the figure might be considerably reduced in practice due to waivers of preliminary hearings and guilty pleas. He also acknowledged that a large part of the misdemeanor caseload consists of county penal violations, formerly heard by justices of the peace, which are now classified as misdemeanors as a result of the state court reorganization act. He characterized these as the "barking dog" and "loud parties" cases. Since these cases, which do not involve potential imprisonment, are not affected by the court's order, we conclude that the increase in the magistrates' caseload from providing preliminary hearings to misdemeanants who face potential imprisonment will fall considerably short of Judge Tanksley's projection and, if substantial, will not be overly burdensome. The court concludes, moreover, that while more magistrates as well as courtroom facilities may be needed as a result of our order, and that costs may increase in the short run, it will not be a significant increase.

Judge Tanksley also testified, however, that despite dark predictions to the contrary by defendants at the time of this court's initial order, the magistrate system has been highly successful in felony cases. He estimated that as a result of the magistrate system felony caseloads have been reduced by 20 to 25 percent, with corresponding savings to the taxpayers of Dade County. We are pleased to learn that there is now evidence to support our prediction that

"[t]he expense of maintaining a jail, with many persons who would never be there in the first instance if their case had been reviewed by a judge in an effective committing magistrate system, will be substantially less than its present cost and will certainly be a tangible benefit to all citizens of this community." 332 F.Supp. at 1114.

Although we acknowledge that a state has a proper interest in maintaining its fiscal integrity and may legitimately attempt to limit its expenditures, it is well settled that a state may not accomplish such a purpose by invidious distinctions between classes of its citizens. Shaprio v. Thompson, 394 U.S. 618, 633, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969). In the case before us, defendants must do more than show that denying due process to misdemeanants will save money. In the absence of other suggestions of compelling interests, we must conclude that present practice deprives misdemeanants of equal protection of the law, in addition to due process and fourth amendment guarantees.

## IV

THE PRESENT PRACTICE WHICH PROVIDES DIFFERENT TIMES FOR PRELIMINARY HEARINGS FOR THOSE CHARGED WITH CAPITAL OFFENSES OR OFFENSES PUNISHABLE BY LIFE IMPRISONMENT DIFFERS FROM THE COURT'S PLAN AND VIOLATES THE DUE PROCESS AND EQUAL PROTECTION CLAUSES OF THE FOURTEENTH AMENDMENT AND THE FOURTH AMENDMENT.

Rule 3.131(b) of the Florida Rules of Criminal Procedure, as amended, provides:

"In all cases where the defendant is in custody, except capital offenses or of-

fenses punishable by life imprisonment, the preliminary hearing shall be held within 72 hours of the time of the defendant's first appearance. *In all capital offenses and offenses punishable by life imprisonment* and in all cases where the defendant is not in custody *the preliminary hearing shall be held within seven days of the time of defendant's first appearance."* (emphasis added).

The present practice, as set forth in that rule, differs from the court's plan and Sheriff Purdy's plan only insofar as it excludes the two enumerated categories of offenses from the established time frame of four days.[4]

By creating a separate classification for persons accused of capital offenses or offenses punishable by life imprisonment, the practice suffers an equal protection infirmity similar to that caused by the total exclusion of misdemeanants from a preliminary hearing. The court finds no compelling governmental interest which justifies the classification. *Cf.* In re Kras, *supra,* and Shaprio v. Thompson, *supra.*

By failing to set the same time requirements for capital and life imprisonment cases as compared to other felonies, the present practice condones an extended deprivation of liberty without a hearing.

The timeliness of the preliminary hearing has been a constant concern of this court. The court recognizes that tolerating a deprivation of liberty for four days, absent a judicial determination of probable cause, is questionable. In Argersinger v. Hamlin, 407 U.S. 25, 92 S.Ct. 2006, 32 L.Ed.2d 530 (1972), the Court prohibited a denial of liberty for one day absent counsel. Here we are condoning a denial of liberty for four days absent a hearing. Property rights have consistently been protected by a

hearing prior to the taking. Fuentes v. Shevin, 407 U.S. 67, 92 S.Ct. 1983, 32 L. Ed.2d 556 (1972).

■ Thus, while four days may be a reasonable time to allow witnesses to be summoned and other mechanical tasks performed, an eight day (24 hours for initial appearance plus seven days) deprivation of liberty is not reasonable. For the reasons set forth in the original Pugh v. Rainwater decision and upon the recent decisions of the Supreme Court cited *infra,* the court finds that the present practice of not setting the same time requirement for all persons who will be proceeded against by information violates the fourth and fourteenth amendments.

## V

THE NEGLECT OF THE PRESENT PRACTICE TO PROVIDE SANCTIONS FOR FAILURE TO CONDUCT THE PRELININARY HEARING AND THE REFILING OF AN INFORMATION IF A DEFENDANT IS DISCHARGED DIFFERS FROM THE COURT PLAN AND RESULTS IN VIOLATION OF THE FOURTH AND FOURTEENTH AMENDMENTS.

■ The present practice provides no sanction for the failure to accord a preliminary hearing or for the refiling of an information after a determination of no probable cause. It does not, because Florida law tolerates the use of the information process in lieu of a probable cause determination by a neutral and detached magistrate. Rule 3.131(a), Florida Rules of Criminal Procedure, as amended. The court plan did contain sanctions. If a preliminary hearing was not accorded within the time period set and there was neither a waiver nor proper postponement, then the defendant was

4. The court plan had required initial appearance within three hours of arrest and preliminary hearing within four days thereafter. The new Florida Rules require initial appearance within 24 hours, and preliminary hearing 72 hours (3 days) thereafter. Thus the crucial time of preliminary hearing is hastened by three hours under the Florida Rules, except for the persons falling into the classification set forth above.

to be discharged and the charges withdrawn. The charges could be refiled, but if a preliminary hearing was not accorded thereafter, then the defendant was to be discharged and not held again to answer except upon an indictment returned within 30 days of the second withdrawal. Pugh v. Rainwater, 336 F.Supp. 490, 493 (S.D.Fla.1972). If a magistrate made a determination of no probable cause and discharged the defendant, the defendant could not be recharged except upon a grand jury indictment returned within thirty days of the discharge. 336 F.Supp. at 492.

The Court of Appeals requested this court to make specific findings to determine the extent to which the present practice is constitutionally invalid. The failure to provide sanctions is not, of itself, a constitutional infirmity. It is the failure to accord probable cause hearings which offends the Constitution. Thus, the lack of sanctions is invalid only insofar as the failure to provide sanctions results in a system which tolerates the denial of, or overruling of, a preliminary hearing. This is a corollary of the very first finding made above.

The courts, for far too long, have been blind to what all others see. We have operated under a conceptualism which no longer corresponds to the reality in many parts of the nation as increasingly crowded criminal dockets have stalled the process of justice. The hard fact is that in many of our overburdened judicial systems, state as well as federal, it may be a matter of weeks before even direct informations are filed, as was the situation in Dade County when this suit was brought, and a matter of months before the accused is brought to trial. In the interim, those unable to post bail suffer what can only be understood as a grave deprivation of liberty, however it may be theoretically justified.

Therefore the court finds that the failure of the present practice to provide a remedy for the denial of a preliminary hearing or the overruling of a preliminary hearing by use of the information process, insofar as that failure tolerates and condones such denials or overrulings, results in a violation of the fourth and fourteenth amendments. See the cases cited in Pugh v. Rainwater, 332 F.Supp. 1107 (S.D.Fla.1971) and the more recent cases of Morrissey v. Brewer, Fuentes v. Shevin, Stanley v. Illinois, Shadwick v. City of Tampa, and United States v. United States District Court, *supra*, which fully support the proposition that the taking of a person's liberty absent a hearing by a neutral and detached magistrate, is unconstitutional.