241 So.2d 390 (1970)
Alvin Eugene ANDERSON, Appellant,
v.
STATE of Florida, Appellee.
No. 38778.
Supreme Court of Florida.
November 12, 1970.
Rehearing Denied December 18, 1970.
*392 Robert T. Jameson, Jr., Ocala, for appellant.
Earl Faircloth, Atty. Gen., Rodney Durrance, Jr. and Wallace E. Allbritton, Asst. Attys. Gen., for appellee.
ADKINS, Justice.
This is a direct appeal from a judgment adjudging defendant guilty of rape and a sentence of death.
On the night of December 24, 1968, the victim was proceeding from Ocala to Gainesville when an automobile behind her began blinking its headlights. Thinking this was a law enforcement officer, the victim pulled off the road and stopped her car.
A male came to the side of her car, shoved a rifle in her face and ordered her to open the door and move over. Another male got in the other side of the car and they drove her to a secluded area. A second car came to the same area. She was raped by three of the males.
Co-defendants Howell and Harvey testified that defendant Anderson was at the scene of the rape and participated. The victim testified that after the rape she gave her unlisted telephone number to one of her rapists at his request. According to her testimony, she did this through fear.
The victim was then released and continued to her place of employment at a hospital in Gainesville. She was then examined by physicians and interrogated by law enforcement officers.
A few days later, one of the rapists telephoned the victim. After several of these calls between December 25, 1968 and January 3, 1969, she agreed to a meeting place in order to enable the police to capture the caller. As a result, co-defendants Tuggerson and Howell were apprehended. They admitted the rape and named defendant Anderson as one of the others who participated in the rape.
On March 8, 1969, defendant Anderson was arrested on a charge which is not the subject of this appeal and has never been released from custody. On March 24, 1969, he was granted a preliminary hearing before the County Judge on that charge and was represented by an attorney. One day later defendant was arrested, while still in custody, on the charge of rape which is the subject matter of this appeal. On March 26, 1969, the County Judge arraigned him on the charge of rape and asked him if he was still represented by the same attorney. Defendant responded that he was and the County Judge inquired if he would like to sign a waiver of preliminary hearing. Defendant signed the waiver.
On March 31, 1969, defendant's attorney filed a motion for preliminary hearing along with an affidavit wherein he challenged the validity of the waiver. On the same day the County Judge entered an order denying the motion on the ground that a preliminary hearing had been waived and the defendant had been bound over to the Grand Jury. An indictment charging defendant with the crime of rape was returned by the Grand Jury on April 2, 1969.
Defendant contends that the County Judge should have granted the preliminary hearing under the circumstances of this case and by denying the preliminary hearing defendant "lost a valuable right at a critical stage of the prosecution." This contention is without merit.
A preliminary hearing is for the purpose of determining if probable cause *393 exists to hold one accused of a crime for trial. Such a hearing is not a critical stage in the proceedings, Harris v. State, 208 So.2d 108 (Fla.App. 1, 1968), unless prejudice results to the defendant in some subsequent proceedings, or under the circumstances of the case the preliminary hearing was a critical stage in the proceeding. Abbott v. State, 164 So.2d 243 (Fla.App.2d, 1964). It is not a prerequisite to a criminal prosecution or the filing of an indictment or information. Sangaree v. Hamlin, Fla., 235 So.2d 729 (opinion filed May 13, 1970).
Defendant in his affidavit attached to a subsequent motion for preliminary hearing admitted that he signed the waiver, but said that he did not read it and signed it only "because he thought it had something to do with his attorney representing him." Rule 1.122(b), Cr.P.R., 33 F.S.A., provides for the waiver of a preliminary hearing by the defendant. Contrary to the contention of defendant, waiving the preliminary examination does not admit that either the circumstances or the character of defendant's offenses are different from what they really are, or that his offense is more grievous or of higher grade of criminality than the evidence makes it in the eyes of the law. By such waiver the defendant does not abandon any subsequent remedy given him by the law. Benjamin v. State, 25 Fla. 675, 6 So. 433 (1889).
Neither defendant's motion nor the record suggest the existence of factors which would make the preliminary hearing a critical or essential stage of the criminal proceeding, nor does it appear that prejudicial harm resulted to the defendant because of the denial of the subsequent motion for a preliminary hearing. A legal waiver of preliminary hearing was effected and the defendant has failed to allege sufficient grounds to withdraw the waiver. There could be no prejudice to the defendant in view of the fact that the Grand Jury by indictment found probable cause only two days after the County Judge denied the motion for preliminary hearing.
The palm print of defendant was taken on March 25, 1969. The deputy sheriff could not recall the exact dates defendant's fingerprints were taken or whether they were taken at the same time as the palm print. Defendant contends that upon arrest the State is entitled to take defendant's fingerprints or such other prints they desire at such time. However, defendant says, any further requests for prints should be with all of the safeguards provided by law against self-incrimination. He contends that the State should have taken all of the prints considered necessary at the time of arrest.
Palm prints are frequently left at scenes of crimes and are just as reliable and accurate as fingerprints. Modern Scientific Evidence by Richardson, § 18.12, p. 459 (1961).
Fingerprints and palm prints are not evidence of a testimonial or communicative nature and are, therefore, not protected by the Fifth Amendment strictures against self-incrimination. Schmerber v. California, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966); Gilbert v. California, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967). Under the latter decision, Gilbert v. California, supra, the taking of a palm print is not a critical stage of the criminal proceeding entitling appellant to advice of counsel. See also Gentille v. State, 190 So.2d 200 (Fla.App.3d, 1966), where the fingerprints of the accused, taken after a lawful arrest and appointment of counsel without said counsel being present, were admitted into evidence.
Fingerprints taken by the police before a defendant is arrested and without probable cause would violate his Fourth Amendment protection against unreasonable search and seizure. Under these circumstances, the fingerprints have been held inadmissible. Davis v. Mississippi, 394 U.S. 721, 89 S.Ct. 1394, 22 L.Ed.2d 676 (1969). In the case sub judice defendant's palm print was obtained after a lawful *394 arrest based upon probable cause. This is in accord with the decision in Smith v. United States, 117 U.S.App.D.C. 1, 324 F.2d 879 (1968), cert. den., 377 U.S. 954, 84 S.Ct. 1632, 12 L.Ed.2d 498 (1963); where the Court said:
"We find no error in the admission of the palm print of Smith taken the day before trial for purposes of comparison with the palm print on the victim's credit cards. Unlike the situation in Bynum v. United States, 104 U.S.App.D.C. 368, 262 F.2d 465 (1958), appellant here was in lawful custody at the time his prints were recorded. Cf. Bynum v. United States, 107 U.S.App.D.C. 109, 274 F.2d 767 (1960) (per curiam). And it is elementary that a person in lawful custody may be required to submit to photographing, United States v. Amorosa, 167 F.2d 596, 599 (3d Cir., 1948), and fingerprinting, United States v. Krapf, 285 F.2d 647, 650-651 (3d Cir., 1961), as part of routine identification processes. United States v. Kelly, 55 F.2d 67, 83 A.L.R. 122 (2d Cir., 1932)." (p. 882)
Many decisions in other states have held that the correspondence of palm prints or bare hand marks found at the scene of the crime with those of the accused is admissible in evidence to prove the latter's identity. See Annotations, 3 A.L.R. 1706; 28 A.L.R.2d 1115, 1127. Under these authorities where a defendant has been arrested and fingerprinted pursuant to such arrest and later obtains counsel and thereafter is requested to give his palm print without being advised of his rights, such taking of the palm print does not constitute self-incrimination.
Nola Bryant testified that on the day after the alleged rape defendant discussed with her his actions of the night before, saying, "I made that whore crawl in the back seat and she was saying, `please, please.'" Defendant contends that this conversation was too general to have probative worth and was completely irrelevant and prejudicial.
Ruth Crosby testified on behalf of defendant that he was at her home on the night when the rape occurred. The testimony of Nola Bryant as to the alleged admission by defendant was relevant in that it tended to discredit the alibi testimony. Furthermore, the testimony was relevant in that the admission tended to corroborate the testimony of the two accomplices as to the details of what took place at the rape scene and as to defendant's part in the commission of the offense.
Nola Bryant further testified that the statements of defendant were made in a jocular manner. This fact goes to the weight of the evidence rather than to its admissibility. The jurors were entitled to decide the truth or falsity of the admission given under such circumstances.
Defendant filed a general motion for production of State's evidence and included therein a demand that he be furnished the results or reports of any scientific tests made in connection with this case. He also filed a motion for production of polygraph results. He contends that the Court erred in denying his motion for the polygraph results of the test taken upon codefendants Howell and Harvey who testified against defendant.
In State v. Gillespie, 227 So.2d 550 (Fla.App.2d, 1969), the Court noted that under the decisions in Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1968), and Williams v. Dutton, 400 F.2d 797 (5th Cir., 1968), denial of timely discovery of evidence "favorable" to the accused which is otherwise unavailable to him may affect the fairness of the trial to such an extent that due process is denied. The Court then discussed what was meant by "favorable evidence" as used in the Brady case. It said:
"The bounds of this responsibility are difficult to accurately proscribe, but the best guidelines we have found were laid down by the Maryland court in State v. Giles [239 Md. 458, 212 A.2d 101 (1965)], and were subsequently cited with *395 approval by Mr. Justice Brennan in Giles v. Maryland [386 U.S. 66, 87 S.Ct. 793, 17 L.Ed.2d 737 (1967)]:
`As we see it, the prosecution should disclose to the defense such information as it has that may reasonably be considered admissible and useful to the defense in the sense that it is probably material and exculpatory, and where there is doubt as to what is admissible and useful for that purpose, the trial court should decide whether or not a duty to disclose exists.'" (Emphasis supplied.) (Text 556 of 227 So.2d)
Under this decision the evidence must not only be useful, but also admissible. The results of polygraph tests are not admissible as evidence under Florida law. Kaminski v. State, 63 So.2d 339 (Fla. 1952); State v. Brown, 177 So.2d 532, 533 (Fla.App.2d, 1915). Since the polygraph results were not admissible as evidence, they were not the type of test results susceptible to pre-trial discovery. An attack on the credibility of the witnesses was available to the defendant by cross-examination in the presence of the jury.
The trial judge gave instructions to the jury under the provision of Fla. Stat., § 776.011, F.S.A. The Statute reads:

"Principal in first degree.  Whoever commits any criminal offense against the state, whether felony or misdemeanor, or aids, abets, counsels, hires, or otherwise procures such offense to be committed, is a principal in the first degree and may be charged, convicted and punished as such, whether he is or is not actually or constructively present at the commission of such offense."
Defendant contends that since he was charged as a principal and tried as a principal, he was necessarily taken by surprise when an instruction was given relating to aiding and abetting. He seeks comfort in the decisions, Newman v. State, 196 So.2d 897 (Fla. 1967) and McClendon v. State, 196 So.2d 905 (Fla. 1967).
In Newman v. State, supra, defendant was indicted as a separately accused person for rape and was not indicted as an aider or abettor to the crime. The defendant was identified by the prosecutrix as one of three persons who raped her and defendant admitted his presence at the commission of the alleged rape. The Court held that defendant was not taken by surprise and the giving of an instruction on aiding and abetting was not prejudicial error.
In McClendon v. State, supra, the defendant was also indicted and tried separately for rape and the State produced evidence that two other persons participated in the rape with the defendant. It held that the defendant was not taken by surprise by evidence linking him as an aider or abettor. In the case sub judice the indictment was filed charging "Jimmy Lee Tuggerson, James B. Howell, Harvey Eugene Anderson, and Eugene Calvin Harvey" with the crime of rape. At the trial the testimony of two of the conspirators placed defendant at the site of the crime and other State's evidence, "the palm print," was introduced in support of this testimony. Based on these facts defendant cannot claim surprise as to any evidence which tended to establish him as an aider or abettor and the instructions under Fla. Stat., § 776.011, F.S.A. were appropriate and proper. See Jacobs v. State, 184 So.2d 711 (Fla.App.1st, 1966) and Prather v. State, 182 So.2d 273 (Fla.App.2d, 1966), where the Court said:
"Since 1957 under that statute, an accessory before the fact may be indicted or informed against as though he were the principal without alleging the facts by which he aided and abetted or advised and procured the commission of the crime. The statute eliminates the former distinction between principals and accessories before the fact so that now the question of presence at the commission of the crime is immaterial. One charged *396 as the immediate perpetrator of the crime may be convicted upon proof showing that he did aid, abet, counsel, hire or otherwise procure the offense to be committed whether or not actually or constructively present at the commission of the offense because such person is by statute made a principal in the first degree; that is, the same as the immediate perpetrator of the crime. 12 F.L.P. Indictments, § 33 and Chaudoin v. State, Fla.App. 1960, 118 So.2d 569." (Emphasis supplied.)
The defendant lastly contends that the evidence was not sufficient to support a verdict of guilty and the Court erred in denying his motions for a directed verdict of not guilty.
The victim testified as to the facts surrounding the offense and her testimony was corroborated by that of two accomplices. The weight of the testimony of an accomplice is a question for the jury, which passes upon the credibility of an accomplice as upon that of every other witness. If his testimony carries conviction and the jurors are convinced of its truth, they should give to it the same effect as would be allowed to that of a witness who is in no respect implicated in the offense. Myers v. State, 43 Fla. 500, 31 So. 275 (1901). There is no rule of law forbidding a conviction upon the evidence of an accomplice alone. The law is well settled that the uncorroborated testimony of an accomplice is sufficient to support a conviction if it satisfies a jury of defendant's guilt beyond a reasonable doubt. Land v. State, 59 So.2d 370 (Fla. 1952). See 6 F.L.P., Criminal Law, § 445.
Immediately following the alleged offense the victim was found to have a high count of highly mobile sperm in her vaginal canal. The defendant was identified by the two accomplices who testified defendant was one of the men who participated in the rape of the victim. Defendant's palm print was shown to be the same as a latent palm print lifted from the victim's car in which the rape took place. This print was lifted by investigators the morning following the offense. The evidence was sufficient to sustain the verdict and the trial court was correct in denying the motion for directed verdict.
We have reviewed the evidence to determine if the interest of justice requires a new trial (Fla. Stat., § 924.32(2), F.S.A.) and find that the evidence is sufficient to support the judgment.
There being no reversible error the judgment and sentence of the lower court is affirmed.
ROBERTS, Acting C.J., DREW, CARLTON and BOYD, JJ., and WIGGINTON, District Court Judge, concur.