David L. LASLEY *v.* STATE of Arkansas

CR 81-22          625 S.W. 2d 466

Supreme Court of Arkansas
Opinion delivered December 7, 1981

*Randall W. Ishmael* and *David N. Laser*, for appellant.

*Steve Clark*, Atty. Gen., by: *Arnold M. Jochums*, Asst. Atty. Gen., for appellee.

JOHN I. PURTLE, Justice. Appellant was convicted of capital murder and sentenced to life without parole. On appeal he argues the following four points (1) the trial court erred in denying the appellant's motion for two separate juries; (2) the trial court erred in refusing to allow appellant's counsel to voir dire prospective juror, Mr. Wood, out of the presence of the other prospective jurors, regarding a newspaper article that he had read concerning the case; (3) the court erred in not granting appellant's motion for a mistrial; and, (4) the evidence was insufficient to support the verdict and the court erred in not directing a verdict of

acquittal at the close of the state's case and in not directing a verdict of acquittal at the close of all the evidence. We do not find prejudicial error in any of the points argued and therefore affirm the judgment rendered in the court below.

Wanda Turnbow, an employee of J. C. Penney Company, was murdered on the evening of December 28, 1979, while she and Thomas Lloyd, a fellow employee, were closing the store. Lloyd testified that while he and Turnbow were closing up he heard a knock on the outside door which was locked. He went to the door and saw the appellant, a former employee, and not being suspicious he opened the door and allowed him to come in. Lloyd testified that the appellant then pulled a gun, forced him to open up the safe, then caused Mrs. Turnbow and him to get up against the wall inside the vault. He said that appellant fired one shot which went by his left ear and clipped a part of his afro hairdo. He also heard the appellant shoot Mrs. Turnbow three times. Lloyd stated that when the bullet narrowly missed him he feigned death and slumped to the floor. He said he glanced up at the appellant as he was taking the money from the safe and leaving the vault. Lloyd alleged he stayed on the floor for several minutes after the appellant left and then attempted to pull the vault door open but was unable to do so. During the next few minutes he wrote a note on a piece of cardboard which stated that the appellant killed Wanda Turnbow.

When Mrs. Turnbow did not arrive home at the expected time her husband went to the store. He was able to enter through the unlocked door, then contacted Lloyd by voice through the vault door and upon opening the door found his wife's body in a pool of blood and Mr. Lloyd standing with the note in his hand stating the appellant had been the perpetrator of the crime.

The appellant's version of what happened is entirely different. He stated that he was on suspension as an employee of the store as a result of a $1500 shortage in company funds a few weeks earlier which he contended Thomas Lloyd had taken and given him a portion of to

remain quiet. He further testified that he received a call from Lloyd on the morning of the murder. He said Lloyd requested him to bring a pistol to the store at closing time, which would be used to make it look like there had been a robbery although Lloyd was really going to pull an inside job. Appellant stated he secured his father's pistol and delivered it to Lloyd at the door of the store about 9:15 p.m. on the date of the murder. He alleged that Lloyd told him to return in 15 or 20 minutes and at that time Lloyd appeared at the door and handed him a money bag containing some money and the pistol which he had given Lloyd earlier. Appellant stated Lloyd told him he had changed his mind but was giving him some money and returning the pistol because of the trouble he had gone through.

The appellant took a friend into his confidence later in the evening and told him he had received some money as a part of a robbery and wanted the friend to hide it. The friend hid the money bag. It contained $600 or $700 when discovered. The other bags and the balance of the money and checks were never recovered.

The police came to the murder scene and made a complete investigation. The report revealed a bullet hole two feet four inches above the floor with a hair-like object where the bullet had entered. A second bullet was located about five feet four inches above the floor. Appellant obtained this police report along with other items through Rule 17 discovery procedures. However, the day before the trial the officer who made the report decided that he had made a mistake as to which place the hair-like object was located. He changed his report to show that this item was found at the five feet four inch level rather than the two feet four inch level as shown on the report. This was reported immediately to the prosecuting attorney who changed his copy of the file report to reflect the new information. However, appellant did not learn of this change until the officer testified on the stand. He moved for a mistrial immediately which was denied. The appellant insisted that this surprise information amounted to a complete change of circumstances and required an entirely different approach to his defense. The hair-like object had not been analyzed nor was it introduced into evidence.

There is no need for us to take much time or space to dispose of the argument that the appellant was entitled to be tried by two juries. Our Criminal Code (Ark. Stat. Ann. § 41-1301 (Repl. 1977)) provides that the same jury shall both hear the evidence and determine the sentence in a bifurcated trial for capital murder. The argument that a death qualified jury is impermissible has been dealt with many times by this court and has been repeatedly rejected. *Giles* v. *State,* 261 Ark. 413, 549 S.W. 2d 479, cert. denied 434 U.S. 894 (1977). We recognize that the case of *Grigsby* v. *Mabry,* 483 F. Supp. 1372 (E.D. Ark. 1980), was reversed and remanded in 637 F. 2d 525 (8th Cir. 1980) and is still pending. It is our understanding that the federal district court will deal with this problem. However, at this time we are unwilling to change our previous position on the matter.

The appellant argues that he should have been allowed to voir dire juror Wood out of the presence of the other jurors. Juror Wood had admitted reading something about the case in the newspaper. It might have been the better practice to question this juror out of the presence of the other jurors but we do not think it was prejudicial error to refuse the request. Appellant's counsel may have felt compelled to curtail his inquiry because he was in the presence of all the jurors but, nevertheless, the juror responded to the court's questioning that he would be able to lay aside any idea he had gained from reading the newspaper and try the case as presented. The appellant's request for a sequestered jury for voir dire purposes was denied. We cannot say this constituted error but do note that the court eventually allowed them to be questioned one at a time from the witness stand while all the other jurors listened in. Timewise it would have been as expedient to have sequestered the jury. In any event, the appellant failed to exercise a peremptory challenge on juror Wood and thus has no standing to complain on appeal. *Butler* v. *State,* 264 Ark. 243, 570 S.W. 2d 272 (1978).

The third point argued by appellant is somewhat more difficult. However, we think the changed police report merely went to the credibility of the testifying officer. There is no question that the state's attorney should have notified

appellant's attorney of this event but we cannot say that it was intentional on the part of the state. At the same time we can understand the appellant was surprised at the testimony which was not what he had been led to believe it would be. The hair-like object was not introduced at the trial nor was any great deal made about it during the presentation of the state's evidence. Appellant was also allowed to impeach the witness's testimony in regard to his prior inconsistent statement. Trial courts are granted a wide latitude of discretion in ruling on matters occuring during the trial and decisions of the trial courts will not be reversed in the absence of an abuse of discretion. *Petty* v. *State*, 245 Ark. 808, 434 S.W. 2d 602 (1968). In fact, we have many times held that a mistrial is such a drastic remedy that it is only appropriate if justice cannot be served by a continuation of trial and when it is obvious that any possible prejudice cannot be removed by any other means. *Cobb* v. *State*, 265 Ark 527, 579 S.W. 2d 612 (1979). We are not willing to state that the trial court abused its discretion in denying the mistrial in this case.

The fourth point argued by the appellant is that the evidence was insufficient to support the verdict. The pistol which was admittedly used in the perpetration of this crime was brought to the store by the appellant and was returned to his home after the crime. Also, he was found to have been in possession of one money bag from the robbery. The testimony of Thomas Lloyd clearly and unequivocally places the entire responsibility for this crime upon the appellant. We are unable to say that there was not sufficient evidence to support the verdict. The jury had the right to believe either of the witnesses and in this case they obviously believed Lloyd. When the facts are to be resolved by the jury, we do not disturb their finding. *Campbell* v. *State*, 265 Ark. 77, 576 S.W. 2d 938 (1979).

After reviewing the transcript of the proceedings and all rulings adverse to the appellant we have concluded that there was no prejudicial error in the court's rulings and none which was not argued by the appellant.

Affirmed.

George Rose Smith, J., concurs.

GEORGE ROSE SMITH, Justice, concurring. I do not find the appellant's third point as troublesome as the majority opinion implies. It is virtually a physical impossibility that a bullet, traveling at several hundred feet a second, could have picked up a bit of human hair, carried it through the air, and left it on a wall in such a condition that the hair could be identified. If by some miraculous chance the hair-like object could have been identified as Lloyd's hair, that would simply have corroborated Lloyd's statement and have been of no benefit to the defendant. If the object could not have been identified, that would have been the natural and inevitable expectancy, again with no benefit to the defendant. Thus the trial court's denial of a mistrial was so clearly right that I think a contrary ruling would have been a gross abuse of discretion.