David T. STROBBE *v.* STATE of Arkansas

CR 87-143                                           752 S.W.2d 29

Supreme Court of Arkansas
Opinion delivered June 20, 1988

*Sloan, Rubens, Peeples and Coleman*, by: *Kent J. Rubens*, for appellant.

*Steve Clark*, Att'y Gen., by: *David B. Eberhard*, Asst. Att'y Gen., for appellee.

JACK HOLT, JR., Chief Justice. David Strobbe was convicted of the murder of Marian Mullins and was sentenced to life in prison. Mullins was brutally beaten and run over by a vehicle on May 15, 1986, near West Memphis, Arkansas. The only eye witness to the murder (Michael Phillips) was the State's main witness. His testimony played a major part in the State's case.

Strobbe was arrested and charged with first degree murder on May 15, 1986. The charge was then changed to capital murder with the underlying felony of rape. Before the case was submitted to the jury, the State reduced the underlying felony to attempted rape. The jury convicted Strobbe of first degree murder. His conviction must be reversed because the State withheld material evidence until after trial, which misled the defendant and the court.

Phillips, who was also arrested for the murder, made three pretrial written or recorded statements. At first, he denied knowing anything of the murder. Later the same day he admitted he was there, but denied he participated in any way. In a statement given the next day, he elaborated and said he watched Strobbe beat and rape Mrs. Mullins and then kill her by running over her with a vehicle. There was no indication in any of Phillips' statements that he participated in the murder, and apparently he was never formally charged by the prosecuting attorney.

On the first or second day of the nine-day trial, during *voir dire*, Deputy Prosecuting Attorney John Fogleman and Deputy Sheriff Charles Walker interviewed Phillips and learned that he had helped place Mrs. Mullins in front of the vehicle before

Strobbe ran over her. This information was not disclosed to the defense. Throughout the State's *voir dire*, its questions implied that its main witness, Phillips, saw the crime but did not try to stop it or report it. The State did not indicate in any way that Phillips actually participated in the commission of the crime. While on the witness stand, Phillips testified that he helped place Mrs. Mullins in front of the vehicle so that Strobbe could run over her. This was the first time the defense learned that Phillips had changed his story. However, it was not until after trial that the defense learned that the State knew that Phillips had changed his story on the first or second day of *voir dire*, but that the State failed to disclose this fact to the defense.

During the discussion of instructions in chambers, a question arose about whether Phillips was an accomplice. Deputy Prosecuting Attorney Fogleman had this to say:

> Your Honor, the State could not reasonably anticipate that the witness, Michael Phillips, who at no time before had admitted that he had helped put the body in front of the car would take the stand and admit on the stand that he in fact did help put the body in front of the car making him an accomplice.

The trial judge said:

> Well, the Court's going to give an instruction as a matter of law based upon his testimony that he is an accomplice, and that's based upon his testimony before the Court that he assisted in placing the victim's person before the left front wheel of the vehicle and based upon the medical examiner's testimony . . . that she was alive at the time she was passed over by the vehicle . . . .

During closing arguments, Mr. Fogleman stated at one point:

> Michael Phillips, by his own testimony, made himself an accomplice when he took that witness stand and admitted under oath on direct examination that he helped put the body in front of the car . . . .
>
> Now as Officer Walker testified, that was not something that he had told before. He hadn't told that before, and he got up here on the stand under oath and made himself an

accomplice.

During his portion of the closing argument, Prosecuting Attorney Scott Hunter said:

> Mr. Rubens said that what he got out of Michael Phillips about Michael Phillips placing Marian Mullins body in front of the car before being run over . . . . But the only evidence about that came out in this trial. It's not on any of those previous statements, and it was brought out on direct examination. It was not brought out by Mr. Rubens [defense counsel] on cross examination.

After trial, the State admitted it had prior information as to Phillips' participation in the crime charged as the deputy prosecuting attorney and the deputy sheriff had heard Phillips change his story on the first or second day of *voir dire* examination. The prosecuting attorney said he personally had not been aware of this fact when he conducted the *voir dire* and that Mr. Fogleman apparently had not thought it significant enough to tell him. However, the fact that the prosecutor himself did not know it is immaterial; what his deputy and the police officer knew were attributable to the State. *Williams* v. *State*, 267 Ark. 527, 593 S.W.2d 8 (1979); *Pridgeon* v. *State*, 262 Ark. 428, 559 S.W.2d 4 (1977).

The trial judge ruled that because the information came out during trial and the defense could cross-examine Phillips, there had been no prejudice. The defense argues that it was denied the right to properly *voir dire* the jury and prepare its case, and that the State was guilty of prosecutorial misconduct. The defense contended all along that Phillips was the one who should have been charged with the crime and that Phillips had been promised immunity of some kind in return for his testimony. The State denied any deals or promises were made, but Phillips testified he thought he had a "free ride."

The State first argues it was not required to produce the statement under A.R.Cr.P. Rule 17; second, that the court order was to furnish all written and recorded statements, and this was only an oral statement. The State also contends that the evidence was not exculpatory in nature and, therefore, did not have to be disclosed according to *Brady* v. *Maryland*, 373 U.S. 220 (1963).

Finally, the State argues that the defense had not demonstrated a reasonable probability that the result would have been different had the defense had the information, which is required under *United States* v. *Bagley*, 473 U.S. 667 (1985). We disagree.

Strobbe filed a formal motion for discovery with the trial court which provided in part:

> P.   Copies of all documents, statements, and any other evidence including, but not limited to, a written summary of all oral evidence and statements, now known to the prosecution or which through due diligence may be learned from the investigating agents or witnesses in this case or persons interviewed in connection with the investigation, which is exculpatory in nature or which may lead to material which is exculpatory, or which tends to negate or mitigate the guilt of defendant or which would tend to reduce punishment therefor. In connection with the foregoing request defendant requests the prosecution to provide him with the names and current addresses of persons who possess or can provide such information together with any written or recorded statement *or the substance of any oral statement by any person expected to give evidence at the trial and any other evidence now known or which through the exercise of due diligence could be learned by the prosecution which otherwise reflects upon the credibility, competency, bias or motive of the prosecution's witnesses.* [Emphasis added.]

In a hearing on the motion, with particular reference to paragraph "P," Deputy Prosecutor Fogleman stated: "Anything that negates or mitigates, we will provide that. . . . [T]hat's exculpatory materials. And we will do our duty in that regard, your Honor." During the course of the same hearing, Strobbe called the court's attention to paragraph "Z" of his motion, which stated:

> Z.   Defendant requests that each of the above be considered to be a continuing request and demand and that the prosecution, after complying with any Order or directive for discovery made or entered herein, be

directed to promptly notify the defendant's attorney of any additional documents, transcripts, reports, records, statements, property, tapes, physical evidence, identities or witnesses or any other evidence, items or information relevant, pertinent or material to the matters embraced within the four corners of the subject information, discovered by the prosecution in the time prior to the conclusion of this case, which is subject to or covered by the Order or directives of this Court.

The court responded to paragraph Z by stating: "Now Z, of course, the Court will treat these as a continuing request." Deputy Prosecutor Fogleman responded, "Any information that we develop that's subject to discovery will be provided to the defendant," to which the court stated, "Alright."

In short, the court noted that appellant's motion for discovery would be treated as a continuing request, and the court accepted the prosecuting attorney's assurance that any new information subject to discovery would be provided to the appellant. Certainly the impeachment evidence that Phillips was in fact a participant in the crime falls within the realm of information subject to discovery and the rule enunicated in *Brady* and *Bagley, supra.*

In a case similar to this one, the prosecuting attorney assured the trial judge that an offer of immunity had not been made to several witnesses when in fact his deputy prosecuting attorney had made such an offer. *Pridgeon* v. *State, supra.* When the truth came out during trial, a mistrial was requested and denied. We reversed, stating that even though the matter came out during trial and the witnesses could be cross-examined,

[A]ppellee overlooks the fact that appellant was denied the opportunity to pose questions to prospective jurors regarding whether they would consider offers of immunity in determining the witnesses' credibility and, thereby, prevented effective use of that information in exercising his peremptory challenges. [citation omitted] Here the prejudice is heightened by the fact that the court, in the belief that no offer of immunity existed, had instructed the jury that no offers of immunity had been made. [citation

omitted] 'Fairness is a requirement of due process.' [citation omitted]

Strobbe was similarly prejudiced in this case. From the very beginning of the trial, it was critical for the defense to know whether Phillips participated in the murder. During *voir dire*, both sides focused on the fact that the State's case was based on the testimony of Phillips. The State knew its case rested primarily on this one witness, and they represented that he was merely there—that he only saw the crime. The defense was based on destroying the credibility of Phillips, and the State's investigation was under attack before, during, and after the trial. Questions were raised about the failure to investigate or formally charge Phillips. The trial judge might have ruled differently in several instances if the truth had been known.

The State's arguments pale when one considers the duty of Fogleman and Hunter as officers of the State and the court to come forth with critical evidence. Phillips' statement was significant because it changed his role from that of a bystander to a participant and ultimately resulted in his being declared an accomplice to the murder as a matter of law. *See David* v. *State*, 295 Ark. 131, 748 S.W.2d 117 (1988). The information should have been made available as soon as it was known. The error consisted of the withholding of significant evidence which denied Strobbe a fair trial. For that reason the case is reversed and remanded for a new trial.

Several other issues are raised which might arise upon retrial. One witness for the State mentioned that Strobbe asked for a lawyer when he was questioned. Although a pretrial order prohibited the disclosure of this information, the State failed to tell its witnesses not to mention this fact during their testimony. Undoubtedly, this will not reoccur at a new trial.

The State introduced many photographs of the scene and the victim. Some, notably those taken at the autopsy of the victim's head and parts of her body, are exceptionally grisly and sickening, which no ordinary person can view without being repulsed. It was not necessary that all these photographs be introduced into evidence. One photograph alone would have demonstrated that the victim's head had been crushed. *See Berry* v. *State*, 290 Ark. 223, 718 S.W.2d 447 (1986). Upon retrial, the

court should exclude exhibits 103, 104, 105, 106, 108 and 109.

Strobbe contends his statement should have been suppressed. We find that the statement was voluntary, and the rights form given complies with the requirements of *Mayfield* v. *State*, 293 Ark. 216, 736 S.W.2d 12 (1987).

Finally, Strobbe argues that there was no substantial evidence to support his conviction. This argument is meritless. *See Surridge* v. *State*, 279 Ark. 183, 650 S.W.2d 561 (1983).

Reversed and remanded.

PURTLE, J., not participating.

HICKMAN, HAYS, NEWBERN, and GLAZE, JJ., concur.

DARRELL HICKMAN, Justice, concurring. I agree the decision must be reversed but in my opinion the error consisted of officers of the state misrepresenting the truth, not merely remaining silent. Officer Walker and Deputy Prosecuting Attorney Fogleman knew Phillips had changed his story. In addition to the quoted statements in the majority opinion, a question and answer of Officer Walker is relevant. Officer Walker was asked, after Phillips had testified:

> Q. Okay, and regarding Michael Phillips, had Mr. Phillips ever made a statement to you in any of those interviews to the effect that he assisted in putting Marian Mullins' body in front of the vehicle?
>
> A. No, sir, he did not.

The officers of the state led the judge and jury to believe that they did not know Phillips had changed his story. This was simply not true. The record speaks for itself on the actions of the officials.

NEWBERN, J., joins the concurrence.

TOM GLAZE, Justice, concurring. While I agree the state's conduct improperly misled the appellant and we are required to reverse and remand this case, I do not agree that the trial court, upon retrial, must exclude the photographs marked as exhibits 103, 104, 105, 106, 108 and 109. I concede these particular photographs are gruesome, but this was an extremely gruesome, horrible crime. This court has held that a photograph is admissi-

ble when it tends to corroborate the testimony of a witness, show the nature or extent of the wounds or *the savagery of an attack*, or is useful to enable a witness to better understand the testimony. *See Gruzen v. State*, 267 Ark. 380, 591 S.W.2d 342 (1979). Here, the proffered photographs depict a brutal and savage crime—the victim was killed when her head was run over by a car.

In ruling the foregoing photographs inadmissible, the majority relies on *Berry v. State*, 290 Ark. 223, 718 S.W.2d 447 (1986). The *Berry* case, however, cited and relied on *Gruzen* and in no way overruled the foregoing principle embraced by the *Gruzen* court. The *Berry* decision merely reflected this court's reaction in that case to the *carte blanche* acceptance of inflammatory photographs by the trial judge. Here, the trial judge did not automatically accept all the photographs of the victim, and, in fact, he excluded a number of photographs of the victim, four of which were of skull fragments.

The holding in *Berry* instructs a trial judge to do a careful analysis of the probative value of the photographs versus their prejudicial effect. As I pointed out above, the state was justified in introducing the repugnant photographs (which the majority now chooses to exclude) in order to prove the savagery of the act used to kill the victim. On the other hand, I see minimal prejudice caused by their introduction in view of the strong evidence—aside from or in addition to accomplice Phillips' incriminating statements—that shows the appellant committed the crime. The following are examples of the other evidence bearing on appellant's guilt: (1) Strobbe and Phillips were at Round One (a bar) the morning of the murder, and the victim was seen on top of Phillips' car; (2) Strobbe told the owner of the bar that he was going to "get him some," but then said he was kidding and that he was going home; (3) the victim was in the appellant's car when he and Phillips left Round One, and the car drove off in the direction of Mound Road (where the body of the victim was found later that morning); (4) a tan shirt bearing the name "David" and a pencil with the name "David Strobbe" inscribed on it were found near the scene of the crime; (5) a similar shirt had been given to the appellant by his employer, and other evidence reflected that on the morning of the murder the appellant wore a similar shirt to the one found at the scene of the crime; (6) a beard net, similar to the one found in appellant's car was found at the scene with blood

on it; (7) blood that matched the characteristics of the victim's blood was found inside and underneath appellant's car, and on his tennis shoes; (8) dyed Caucasian-head hairs were found on the inside rim of the left rear tire on appellant's car, on the lower bottom panel below the passenger side door, and on the tan shirt bearing the name "David" found at the crime scene; (9) in a statement to the police, appellant stated that he had not loaned his car to anyone; (10) appellant had scratch marks on his back.

This court has stated that the determination of the trial court will not be reversed absent an abuse of discretion. *Berry*, 290 Ark. 223, 718 S.W.2d 447. The trial judge in this cause analyzed the state's photographs, excluded a number of them and admitted a large number of others. I am unwilling to say the judge abused his discretion in deciding the probative value of the photographs outweighed the prejudice they might have caused. Both the case law and the circumstances of this case support that judge's ruling, and in my view, the majority is merely substituting its own discretion for that of the trial judge's.

HAYS, J., joins in this concurrence.