Larry YATES *v.* STATE of Arkansas

CR 90-63                                    794 S.W.2d 133

Supreme Court of Arkansas
Opinion delivered July 16, 1990
[Rehearing denied September 10, 1990.*]

*Sullivan, Emmons & Kissee,* by: *Larry Dean Kissee,* for appellant.

*Steve Clark,* Att'y Gen., by: *J. Brent Standridge,* Asst. Att'y Gen., for appellee.

---

*Hays, Glaze, and Turner, JJ., would grant rehearing.

JACK HOLT, JR., Chief Justice. On July 26, 1987, the appellant, Larry Yates, was convicted of two counts of rape and sentenced to eighteen years imprisonment in the Arkansas Department of Correction for each count, to be served consecutively.

Yates alleges two points of error on appeal: 1) that the trial court erred in denying his motion to require the disclosure of his polygraph test results and related materials, and 2) that the trial court erred in holding that his confession was voluntary. We agree that the trial court erred in denying Yate's motion to require the disclosure of his polygraph test results and related materials; therefore, we reverse and remand.

On August 12, 1987, the Sharp County Sheriff's Department requested that Yates go the Department's offices for questioning. Upon arriving, Yates was advised that his twelve-year-old daughter alleged that he had had sexual intercourse with her on two separate occasions. After denying the allegations, Yates submitted to a polygraph examination administered by Arkansas State Police Officer Charles Beall.

Officer Beall questioned Yates and subsequently informed him that he had failed the polygraph test. Shortly thereafter, Yates signed a statement, written by Beall, in which he admitted the sexual conduct.

Prior to trial, Yates filed a motion to suppress the statement on the basis that it was involuntarily given due to police coercion in the form of threats, deceit, and promises of a suspended sentence. Pursuant to his motion to suppress, Yates also filed a discovery motion requesting that the State provide any written or recorded statements and the substance of any oral statements made by him, as well as any reports or statements made by experts relating to the results of physical or mental examinations, scientific tests, experiments, or comparisons. Yates also requested any materials that would negate his guilt or tend to reduce his punishment.

The State disclosed Yates's written statement and stated that any reports or statements of experts would be furnished prior to trial. Yates then filed a supplemental motion of discovery and requested disclosure of the polygraph tapes, in which Officer

Beall questioned Yates, and the questions asked before and after Yates's polygraph examination. The State refused to disclose this information and contended that the materials were its work product.

Before discussing the merits of the case, we will initially address the State's contention that Yates's argument as to the non-disclosure of the polygraph examination materials has not been preserved for appeal because the requested materials are not a part of the record due to his failure to utilize Ark. R. Crim. P. 19.6 for purposes of appellate review.

Rule 19.6 addresses in camera proceedings and provides as follows:

> The court may permit any showing of cause in whole or in part for denial or regulation of disclosures to be made in camera. A record shall be made of such proceedings. If the court enters an order granting relief following a showing in camera, the entire record of such showing shall be sealed and preserved in the records of the court, to be made available to the appellate court in the event of an appeal.

The State's reliance on *Snell* v. *State*, 290 Ark. 184, 717 S.W.2d 818 (1986), is misplaced. In *Snell*, a capital felony murder case, the State produced a statement of a potential witness for the trial court's inspection and the trial judge pronounced the statement free of exculpatory information but refused the defendant's request to have it appended to the record so that it could be reviewed on appeal. We ordered the supplementation of the record on appeal to include the statement, pursuant to Ark. R. App. P. 6(e). We also allowed the parties to petition the court for permission to file a supplemental brief. Our actions were authorized by Rule 6(e), and we were apparently enforcing the mandatory language of the rule that required the sealing and preservation of the showing of cause after the showing had been permitted by the court. Here, there was no showing to the court of the material relating to the polygraph examinations. Thus, our ruling in *Snell* is not of present value.

The State's emphasis on *Rodgers* v. *State*, 261 Ark. 293, 547 S.W.2d 419 (1977), is also misdirected. The relevance of that case to the issue at hand centers on the defendant's contention

that he should have been permitted to discover the personnel file of a police officer because it contained information that would tend to impeach the officer's credibility as a witness. The trial court had examined the officer's personnel file in camera and determined that nothing therein was material to the defendant's case. Accordingly, the trial court refused the defendant's request for discovery and also refused to seal the personnel file and make it a part of the record. We were not, however, precluded from addressing the defendant's point of error.

The purpose of an in camera proceeding in *Rodgers* was discussed as follows:

> There are valid policy reasons for maintaining confidentiality of such files. Still, the trial court has some discretion in the matter of discovery when impeaching matter is concerned. But, in the exercise of discretion the necessity for a defendant's searching confidential matter must be weighed against the public policy of confidentiality of secrecy. This, the trial court may do by an *in camera* inspection of the material sought.

(Citations omitted.)

The State's suggestion that Rule 19.6 is mandatory misinterprets the discretionary language of the rule permitting the trial court to hold an in camera proceeding. The beginning language of the rule, "the court may permit," reflects its permissive nature. It also makes common sense. Of what value would it have been to have a showing in camera before the trial court of printed tapes from a polygraph machine that recorded Yates's cardiovascular and respiratory patterns during interrogation and then to have sent these results on to us for review? *See generally* Ark. Code Ann. § 17-32-109 (1987). Simply put, the polygraphic examination of Yates qualifies as a "scientific test" for the purpose of discovery, and all materials relating thereto should, upon request, have been made available to Yates for his examination, or the examination of his experts, without need or necessity of an in camera proceeding.

We further point out that, in this case, there was no valid policy reason for the State's failure to disclose the polygraph examination results to Yates; there was no confidentiality to be

protected. Indeed, the State orchestrated the examination, Yates participated in the examination, and Yates allegedly confessed as a result of being told that he had failed the examination.

In discussing the merits of the case, we note that Ark. R. Crim. P. 17.1 addresses the prosecuting attorney's obligations of disclosure to a criminal defendant and provides in pertinent part as follows:

> (a) Subject to the provisions of Rules 17.5 and 19.4, the prosecuting attorney shall disclose to defense counsel, upon timely request, the following material and information which is or may come within the possession, control, or knowledge of the prosecuting attorney:
>
> &ast; &ast; &ast; &ast;
>
> (ii) any written or recorded statements and the substance of any oral statements made by the defendant or a codefendant;
>
> &ast; &ast; &ast; &ast;
>
> (iv) any reports or statements of experts, made in connection with the particular case, including results of physical or mental examinations, scientific tests, experiments or comparisons;
>
> &ast; &ast; &ast; &ast;
>
> (c) The prosecuting attorney shall, upon timely request, disclose and permit inspection, testing, copying, and photocopying of any relevant material regarding:
>
> &ast; &ast; &ast; &ast;
>
> (ii) the acquisition of specified statements from the defendant.
>
> (d) . . . the prosecuting attorney shall, promptly upon discovering the matter, disclose to defense counsel any material or information within his knowledge, possession, or control, which tends to negate the guilt of the defendant as to the offense charged or would tend to reduce the

punishment therefor.

In Arkansas, the admission of the results of a polygraph examination at trial is improper in the absence of the parties' written stipulation. *Brandon* v. *State*, 300 Ark. 32, 775 S.W.2d 896 (1989). However, the issue before us relates to the disclosure of polygraph materials, regardless of their admissibility at trial, during pretrial discovery.

Although we have not previously addressed this point, other jurisdictions with similar rules of discovery have considered the issue. We find the discussion in *People* v. *Mondon*, 129 Misc.2d 13, 492 N.Y.S.2d 344 (1985), to be particularly well-reasoned and adopt its rationale in requiring, upon proper request, the pretrial disclosure of polygraph examination materials during discovery. The supreme court analyzed the issue in *Mondon* as follows:

> Polygraph testing is based on the principle that the body's nervous system responds involuntarily to stressful conditions, including those created when a person consciously tells a lie. During a polygraph examination, various questions are put to a subject, whose uncontrollable responses are permanently recorded. Initially, the subject is asked innocuous inquiries. Later, important and relevant questions are posed. A qualified technician, by comparing the subject's reactions to these interrogatories, can determine when a lie has been told.

> \* \* \* \*

> . . . [W]hether its results are admissible or not, the polygraph appears to be a sufficiently reliable and valid *investigatory* tool, and has been praised as such.

> Moreover, it is equally obvious and should not be overlooked that the polygraph can be as useful to the defense as to the prosecution. The subject's answers to questions may provide investigatory leads that, together with the examiner's conclusions, will help a defendant to determine whether, in the first instance, to go to trial at all and, if so, who to call as a witness. Furthermore, such data may afford to defense counsel specific source material for

the impeachment of potential prosecution witnesses, as well as clues that may aid in the fact-finding process in general.

Therefore, despite widespread judicial reluctance to admit polygraph results in evidence in criminal cases, the polygraph examination qualifies as a "scientific test or experiment", at least for purposes of pretrial discovery. When a demand to produce is made . . ., the prosecutor is obligated to make available "[a]ny written report or document, or portion thereof, concerning a physical or mental examination, or scientific test or experiment, relating to the criminal action or proceeding which was made by, or at the request or direction of a public servant engaged in law enforcement activity . . .". Because the statute explicitly directs the disclosure of reports, or parts thereof, of scientific tests or experiments made in connection with a case, and not just those that will be introduced in evidence, the inadmissibility of polygraph findings at trial does not exclude them from the law's *pretrial* ambit.

Furthermore, the use of the word "any" in the statute in connection with these written reports or documents, obviously encompasses any and all such items, including both the full body of the documents or reports, as well as the results and findings.

\* . \* \* \*

In addition, where polygraph results are favorable to a defendant's cause, there appears a further legal basis for a turnover of such information to the defense; namely, that it falls within the spirit, if not the letter, of *Brady* v. *Maryland*. . . .

(Citations omitted.)

*See also People* v. *Bass*, 84 Ill. App. 3d 624, 405 N.E.2d 1182 (1980); *State* v. *Christopher*, 134 N.J. Super. 263, 339 A.2d 239 (1975). *But see State* v. *Moore*, 642 S.W.2d 917 (Mo. App. 1982); *Anderson* v. *State*, 241 So. 2d 390 (Fla. 1970).

In the commentary to Rule 17.1, it is noted that:

Broad pretrial disclosure would seem to be not only desirable but also necessary. By encouraging guilty pleas, reducing delays during trial, and in general lending more finality to the disposition of criminal cases, disclosure alleviates docket congestion and permits a more economical use of resources.

*See also Williamson* v. *State*, 263 Ark. 401, 565 S.W.2d 415 (1978).

Rule 17.1(d) incorporates the due process requirement that evidence favorable to a defendant on issues of guilt or punishment be disclosed by the prosecutor. *Brady* v. *Maryland*, 373 U.S. 83 (1963). In so far as the rule requires pretrial disclosure, it represents an extension of the *Brady* mandate. Additionally, the Brady rule has been interpreted to include impeachment, as well as exculpatory, evidence. *See United States* v. *Bagley*, 473 U.S. 667 (1985).

In order for Yates to prevail on this issue, he must demonstrate a reasonable probability that the result would have been different had he had the information. A "reasonable probability" is a probability sufficient to undermine confidence in the outcome. *See United States* v. *Bagley, supra.*

In this case, Yates specifically advised the trial court that his primary reason for requesting the disclosure of the polygraph materials was to impeach Officer Beall at the suppression hearing. Yates was entitled to the opportunity, apart from his own investigations, to challenge conclusions drawn from tests undertaken by the State. *See Dumond* v. *State*, 290 Ark. 595, 721 S.W.2d 663 (1986). The importance of the circumstances surrounding the examination, and the validity of its results, cannot be minimized in this situation.

Yates was prejudiced in this case because, from the very beginning of trial, it was critical for him to evaluate the circumstances under which his polygraph examination was administered and upon which Beall's conclusions were based. The State knew that its case depended primarily upon Yates's confession, ostensibly obtained due to the outcome of the polygraph examination. Yates's defense was based on destroying Beall's credibility and establishing the involuntariness of his

confession. Questions were raised about the circumstances under which Yates's confession was obtained; consequently, the trial judge might have ruled differently in several instances if the truth were known. *See also Strobbe* v. *State*, 296 Ark. 74, 752 S.W.2d 29 (1988).

As the disclosure of the polygraph examination materials may affect the trial court's determination of the voluntariness of Yates's confession, we decline to address that issue at this time.

Reversed and remanded.

HAYS, GLAZE, and TURNER, JJ., dissent.

TOM GLAZE, Justice, dissenting. The court reverses the appellant's rape convictions because the state withheld the questions propounded to appellant and the tapes resulting from a polygraph examination given him. If appellant had been given these materials, everyone agrees such evidence would have been inadmissible at trial. Nevertheless, the appellant claims if he had received the polygraph materials, he *might* have shown that the confession he gave, following the examination, resulted from the coercive manner by which the officer administered the polygraph test.

As I understand appellant's theory, the officer asked appellant questions pertaining to the rape allegations, the appellant denied he committed the crimes, but during the questioning, the officer repeatedly told the appellant that he did not believe appellant's denials. In sum, appellant argues his confession that he raped his daughter twice *may have* hinged upon whether the officer used trickery or deceit in securing the confession, and, therefore, appellant was entitled to the polygraph results so he could impeach the officer's credibility.

At the suppression hearing held a month before trial, appellant never attempted to proffer the polygraph materials he was seeking. In fact, when appellant's counsel cross-examined the officer who administered the polygraph test, the officer declared that he had a list of the questions he had asked appellant during his test and told counsel he could see them. Appellant's counsel ignored the officer's offer, but instead he merely cross-examined the officer concerning several of the questions.

Nor did the appellant attempt to proffer the polygraph tapes that resulted from his polygraph test. The majority curiously suggests such a proffer would have been useless on appeal because this court would be unable to understand the tapes. Such a comment begs the question as to why the appellant failed to make his record. Obviously, upon the remand of this case, appellant will be required to cross-examine the officer regarding the tapes — which is exactly what appellant should have done at the suppression hearing held prior to his trial.

In reality, this court is left to indulge appellant's mere speculation that now, upon remand, he *might* be able to show that the officer tricked him into confessing when the tapes indicated appellant was telling the truth when he denied having raped his daughter.

Serious question exists concerning whether polygraph test results are discoverable materials. The state cites authority that holds they are not. *See State* v. *Gum,* 309 S.E.2d 32 (W. Va. 1983); *Anderson* v. *State,* 241 So. 2d 390 (Fla. 1970); *State* v. *McGee,* 91 Ariz. 101, 370 P.2d 261, *cert. denied,* 371 U.S. 844 (1962). However, assuming such materials should be discoverable, surely the defendant must show how he was prejudiced by his having been denied the information. Here, appellant completely failed in this respect.

At the suppression hearing, the state showed that appellant signed a waiver and volunteered to take the polygraph test. No evidence was offered showing he was abused or prolongedly questioned prior to having given his confession. The evidence showed the appellant was forty-two years old, had a twelfth grade education and had been given his Miranda rights. The officer who gave the polygraph test related that the appellant was never promised anything and that he voluntarily gave his statement. These matters clearly were within the trial court's province to believe or not. The trial court stated that from the totality of the circumstances, it believed appellant's confession was voluntary, and it admitted the statement into evidence which reflected the appellant had sex with his twelve-year-old daughter on two separate occasions.

The trial court properly conducted a suppression hearing regarding the polygraph information and confession issue, and

the appellant failed to offer evidence below showing the trial court was wrong in denying his motion to suppress his confession. The majority now improperly allows appellant another or belated opportunity to show that the trial court's ruling prejudiced him, and in doing so, it apparently also allows him a new trial as well. *Cf. Moore v. State*, 303 Ark. 1, 791 S.W.2d 698 (1990). I believe this court is wrong in allowing such relief and therefore respectfully dissent.

HAYS and TURNER, JJ., join this dissent.