Neal HALL *v.* STATE of Arkansas

CR 90-297                                     812 S.W.2d 688

Supreme Court of Arkansas
Opinion delivered July 15, 1991

*Gibbons Law Firm, P.A.*, by: *David L. Gibbons*, for appellant.

*Winston Bryant*, Att'y Gen., *Sandy Moll*, Asst. Att'y Gen., for appellee.

DONALD L. CORBIN, Justice. Appellant, Neal Hall, was tried and convicted by a Pope County jury for the rape and kidnapping of an eleven-year-old girl. He was sentenced to forty years imprisonment for the rape charge and five years for the kidnapping charge; the sentences were to run concurrently. Appellant appeals the denial of his motion for new trial. We affirm.

The evidence presented at trial reveals that at approximately 8:00 or 8:30 on the morning of October 18, 1989, appellant kidnapped his eleven-year-old victim as she was walking to school. He flashed a gun at her, represented himself to be an

undercover policeman, and told her to get in his car. He then took her into a wooded area, undressed her, blindfolded her, and raped her vaginally, anally and orally.

This evidence was presented through the testimony of the victim herself. The victim's testimony was in complete accord with numerous other witnesses. Dr. Kingsley Bost, the pediatrician who examined the victim, testified she had been vaginally, anally and orally raped. Mike Modika, a school bus driver, testified that on the morning of October 18, 1989, he saw a girl who looked a lot like the victim get into a white car. Modika identified a photograph of appellant's car as the car he saw the girl enter. Two other witnesses testified that on the morning of October 18, 1989, they saw a white car pulled off the road in an area near the rape scene. Both of these witnessed identified photographs of appellant's car as the car they saw. Still another witness testified that on October 18, 1989, he picked up the victim on the roadside; she was terrified and crying. Yet another witness, Gladys Franklin, testified that she was a passenger on the bus driven by Modika. Franklin stated she knew both appellant and the victim and that she saw the victim enter appellant's car on the morning of October 18, 1989. She also testified that she saw appellant's car leave after the victim entered it.

As the single point presented in this appeal, appellant asserts the trial court erred in denying his motion for a new trial based upon the prosecutor's failure to comply with the discovery request to notify appellant's counsel of the felony convictions of material witnesses. Specifically, appellant argues the prosecutor should have notified counsel of the May 30, 1990 arson conviction of Gladys Franklin. Appellant alleges the prosecutor's failure to disclose requested information precluded him from attacking Franklin's credibility.

Appellant's trial occurred on July 23 and 24, 1990. On February 5, 1990, appellant filed a "Request For Disclosure" specifically requesting "prior criminal convictions or charges or allegations of misconduct against persons whom the prosecuting attorney intends to call as witnesses . . . ." The state responded to the request on February 20, 1990, listing Franklin as a witness, but failing to list any charges or convictions. The state's response also stated that the response would be amended upon the finding

of other witnesses or information. Although there was further written communication between the prosecutor and appellant's counsel regarding discovery, no mention of Franklin's guilty plea and sentence of ten years probation entered May 30, 1990, was made.

After trial and upon discovery of Franklin's conviction, appellant moved for a new trial stating that the prosecutor's failure to disclose the information prejudiced him in that he was precluded from impeaching Franklin's testimony with the arson conviction. At a hearing on the motion, the trial court noted the state's failure to comply with the request was not intentional, but an oversight. Not convinced that evidence of Franklin's prior conviction would have made any difference in the trial, the trial court denied appellant's motion.

Ark. R. Crim. P. 17.1(a) states in pertinent part:

> (a)   Subject to the provisions of rule 17.5 and 19.4, the prosecuting attorney shall disclose to defense counsel, upon timely request, the following material and information which is or may come within the possession, control, or knowledge of the prosecuting attorney:
>
>    . . . .
>
> (vi)   any record of prior criminal convictions of persons whom the prosecuting attorney intends to call as witnesses at any hearing or at trial, if the prosecuting attorney has such information.

We have previously held that reversible error exists when a prosecutor in fact fails to comply with an appellant's timely request for discovery information which results in prejudice to the appellant. *Earl* v. *State*, 272 Ark. 5, 612 S.W.2d 98 (1981).

There can be no doubt as evidenced in the foregoing discussion, that appellant filed a timely request for the information in question and that the state in fact failed to provide the requested information due to an oversight. Although we have previously considered a prosecutor's intent in deciding whether there was a discovery violation, *Lasley* v. *State*, 274 Ark. 352, 625 S.W.2d 466 (1981), such intent or lack thereof is no longer

relevant. *See Yates* v. *State*, 303 Ark. 79, 794 S.W.2d 133 (1990).

The key issue then is whether appellant was prejudiced by the prosecutor's failure to disclose the requested information; absent a showing of prejudice, we will not reverse. *Caldwell* v. *State*, 295 Ark. 149, 747 S.W.2d 99 (1988). We hold appellant has not met his burden of showing prejudice. First, as noted by the trial court, given our lack of knowledge of whether the facts relating to Franklin's arson conviction concern her truthfulness, we can only speculate that appellant's counsel would have been allowed to impeach her credibility with this information. Second, the evidence of appellant's guilt is overwhelming even absent Franklin's testimony.

Excluding Franklin's testimony, the overwhelming evidence against appellant consists of the testimonies of the witnesses, which are related at the beginning of this opinion and the victim's testimony,which is corroborated by other evidence. When taken together, the testimonies of these other witnesses place both the victim and appellant's car near the rape scene at the same time the day the rape occurred. The victim gave an extremely detailed account about her rapist and the circumstances surrounding the crime. Both in a photographic line-up and at trial, she identified appellant as her rapist and kidnapper. The reliability of her identification of appellant is strengthened by the numerous facts to which she testified and which were corroborated by other evidence.

The facts to which the victim testified and the other evidence which corroborates her testimony follow. The victim testified that while she was walking to school, a man wearing a jean jacket, bluejeans, black boots, and blue hat pulled beside her in a car and showed her a gun. She later identified a B-B pistol taken from appellant's apartment as the gun she saw in the car. She testified that a hat taken from the dumpster in front of appellant's apartment looked familiar to her. She also identified a picture of the boots taken from appellant's apartment as the ones her rapist wore. The victim testified her assailant smoked Winston cigarettes; Winston cigarettes were found at appellant's apartment. She stated her attacker had shoulder-length hair that was dirty blond. Appellant admitted his hair was long, but that he cut it

when he learned he was a rape suspect. Hair clippings were found in appellant's bathroom. The victim testified the car she was kidnapped in was white with a blue interior and that she heard tools or cans rattling in the back of the car. She later identified photographs of appellant's car as the one in which she was kidnapped. The truck of appellant's car was filled with aluminum cans.

It is true that the record indicates the jury deliberated for quite some time before reaching a verdict. Appellant contends this indicates the jury had difficulty in reaching a verdict. This contention is purely speculation on his part and it does not mean the jury would have reached a different verdict had Franklin's testimony been impeached. It simply means the jury deliberated for a while; we can only speculate as to the reason. They could have had difficulty in recommending sentencing provisions.

In holding that appellant has not met his burden of showing he was prejudiced by the prosecutor's failure to disclose the requested information, we in no way intimate approval of the prosecutor's actions in this case. Whatever the reason, whether it be intentional or oversight, a prosecutor's failure to disclose discoverable information to a criminal defendant is an action which should be avoided. In this case, there was no prejudice resulting from the prosecutor's negligence; it is this absence of prejudice that forms the basis of our decision.

The decision to grant a new trial in a criminal case is left to the sound discretion of the trial judge and will not be reversed in the absence of an abuse of discretion or manifest prejudice. *Allen* v. *State*, 297 Ark. 155, 760 S.W.2d 69 (1988); *Gardner* v. *State*, 296 Ark. 41, 754 S.W.2d 518 (1988). As there was a plethora of evidence other than Franklin's testimony to support a determination of guilt, we cannot say there was an abuse of discretion and appellant has not demonstrated any prejudice. Thus, the denial of the motion for new trial is affirmed.

Affirmed.

HOLT, C.J., DUDLEY and NEWBERN, JJ., dissent.

DAVID NEWBERN, Justice, dissenting. So long as the evidence against an accused is "overwhelming," a prosecutor, acting in the name of the State of Arkansas, can do anything in the

course of obtaining a conviction! That is the essence of the majority opinion.

"Whatever the reason, whether it be intentional or oversight, a prosecutor's failure to disclose discoverable information to a criminal defendant is an action which *should be avoided.*" (Emphasis added.) Compare that language quoted from the majority opinion with this language from Ark. R. Crim. P. 17.1, to which I have also added emphasis:

> RULE 17.1. Prosecuting Attorney's Obligations.
>
> (a)  Subject to the provision of Rules 17.5 and 19.4, the prosecuting attorney *shall disclose* to defense counsel, upon timely request the following material and information which is or may come within the possession, control, or knowledge of the prosecuting attorney:
>
> ***
>
> (vi)  any record of prior criminal convictions of persons whom the prosecuting attorney intends to call as witnesses at any hearing or at trial, if the prosecuting attorney has such information.

The majority opinion thus begins by altering the terms of the Rule from mandatory to discretionary. It then says we and the trial court may forget the Rule as long as the evidence of guilt is overwhelming.

On February 2, 1990, Hall's counsel filed a discovery request seeking "[a]ny record of prior criminal convictions or charges or allegations of misconduct against persons whom the prosecuting attorney intends to call as witnesses at the hearing or at trial. . . ." On February 20, the prosecutor responded, listing Gladys Franklin as a witness. In April, 1990, Gladys Franklin was charged with arson. On May 30,1990, Franklin pleaded guilty to arson, was fined $500 and put on probation with the prosecutor in attendance. On July 11, 1990, the prosecutor updated his response to the discovery request with the name of an additional witness and a number of physical items he intended to present at the trial. No mention was made of the fact that Ms. Franklin had been convicted of a crime.

Gladys Franklin was a key witness against Hall. If the jury

had had doubts about the testimony of the victim, Ms. Franklin's testimony would have been the only testimony directly identifying Hall as having been with the victim on the day the crime occurred.

As the majority opinion points out, the jury took considerable time in reaching its decision. The jurors might well have had some doubts. Experts testified that no latent fingerprints in Hall's car matched those of the victim, and pubic hairs found on the victim were not similar to Hall's! Of course, no one can say, in the words of the majority opinion, "the jury would have reached a different verdict had Franklin's testimony been impeached." If the accused has to prove that to get a reversal for violation of a rule, then the rule might as well not exist.

Had Hall's counsel been apprised of the fact that Franklin had been charged with arson in the same judicial district in which this trial was taking place, his cross-examination of her could have all but nullified her testimony in the eyes of the jurors who, obviously struggled with the evidence as it was. Was it "prejudicial" for Hall's counsel not to have had that information? Yes, without a doubt.

In *Berna* v. *State*, 282 Ark. 563, 670 S.W.2d 434 (1984), we opined that overwhelming evidence of guilt may be considered along with allegations of error, and we held that, "No longer is it presumed that simply because an error is committed it is prejudicial error." In *Johnson* v. *State*, 303 Ark. 313, 796 S.W.2d 342 (1990), we overlooked error largely on the basis of inconsistent positions taken by Johnson's brief with respect to that error. In *Mitchell* v. *State*, 295 Ark. 341, 750 S.W.2d 936 (1988), we wrote we would not "count" the error of failure of the prosecution to make a tape recording of Mitchell's confession available to him, noting the "overwhelming evidence of guilt," but we emphasized the "good faith" of the police officers who had erased the tape so that it could be reused. With respect to an error in selecting the jury in that case, we said we were able to overlook a "technical" default where the evidence of guilt was overwhelming, the error was harmless, and thus the accused was not prejudiced by the mistake. We could not find evidence that the jury treated Mitchell in any way that was prejudicial to him. In this case, to the contrary, it is unquestionably that there was

prejudice toward Hall, and the prejudice was unfair although the trial court concluded it was the result of an "oversight."

The facts of this case show that a heinous and revolting crime was committed. I cannot, however, condone the conclusion that we can overlook the serious violation of Hall's rights because of the nature of the crime or solely because the evidence against him was strong or even "overwhelming." Any defendant is entitled to fair treatment as it is spelled out in our Rules, regardless of the strength of the evidence against him or her.

If we begin to disregard our explicit Rules which we purport to establish to protect the rights of individuals, the erosion of personal liberties will escalate. We will no longer be able to claim with any degree of honesty to be a "government of laws." Hall should be given a new trial in which his rights are respected regardless of the nature of the crime with which he is charged and regardless of the strength of the evidence against him. That will be a small price to pay for the liberties we enjoy as a result of fairness in the courtroom.

I respectfully dissent.

HOLT, C.J., and DUDLEY, J., join in this dissent.